# HOGAN v. GREENFIELD

(No. 2207; March 3, 1942; 122 Pac. (2d) 850)

14

For the appellant, there was a brief by *Vance R. Dittman* of Denver, Colorado and *Harry B. Henderson* of Cheyenne, and oral argument by *Mr. Henderson.*

For the respondent, there was a brief and an oral argument by *Harold M. Johnson* of Rawlins.

Blume, Justice.

N. R. Greenfield, during his life, was the lessee of Section 36, T. 14, R. 84, Carbon County, Wyoming, a school section, the lease expiring March 1, 1940. The rental was $15.00 per annum. During the life of the lease, the exact time not appearing, N. R. Greenfield died, and Minnie C. Greenfield was appointed as executrix of the last will and testament of deceased, and was such during the times hereinafter mentioned. On January 2, 1940, Fannie Hogan, the appellant herein, who resides in the neighborhood of the foregoing land, made an application to lease the land, offering to pay, as rental, the sum of $126.15 per annum. On January 27, 1940, Mrs. Greenfield, as such executrix, and on behalf of the estate of N. R. Greenfield, also filed an appli-

cation for a lease on the land. She offered an annual rental of $32.00. The conflicting claims thus filed came on for hearing before the commissioner of public lands on March 18, 1940, who, in his finding and order stated as follows:

"Applicant Greenfield is the widow of the former lessee, N. R. Greenfield. She has actual use for the land and does not apply for the same for speculative purposes whatsoever. She has *1000 head of sheep* and summers them under the management of Joe Almeida during the summer months on *Sec. 36-14-84,* together with the lands shown on the plat in blue, and government lands adjacent. As Executrix of the estate of N. R. Greenfield she is the old lessee and claims that under Sec. 91-113 of the Wyo. Rev. Stat. she is entitled to a preference over and above *all* other applicants. As a matter of fact the adverse applicant has no livestock whatsoever except a couple of milk cows and a few saddle horses and it is just a case of her wanting to muscle in on the range setup of the Greenfield estate. She offers an annual rental of $32.00.

\* \* \* \*

Applicant Greenfield in this conflict case has the status of the old lessee; it is the policy of the Board of Land Commissioners to grant such old lessee a new lease if the showing made justifies such action. It is considered her showing is sufficient and the Commissioner *allows her application* at a rental of *$60.00 per year,* or 10c per acre."

An appeal from this action of the commissioner was taken to the State Board of Land Commissioners. The appeal was heard before the board on May 2, 1940, and the action of the commissioner of public lands was approved. Fannie Hogan appealed from this decision to the district court of Carbon County, and that court on December 17th, 1940, confirmed the action of the Board of Land Commissioners. An appeal from that judgment has been taken by Fannie Hogan to this court.

Section 91-109, Rev. St. 1931, so far as applicable here, provides as follows:

"No person shall be qualified to lease state lands except one who is the head of a family, unless he or she has attained the age of twenty-one (21) years; nor shall a firm, association or corporation be qualified to lease state lands unless it has complied with the laws of this state."

Section 91-113, Rev. St. 1931, provides as follows:

"The board shall lease all state lands in such manner and to such parties as shall inure to the greatest benefit and secure the greatest revenue to the state. Except as herein provided, preference shall in all cases be given to applicants who are bona fide resident citizens of the state and to firms, associations and corporations authorized to transact business in the state, having actual and necessary use for the land and holding title to lands in the vicinity of land applied for, who offer to pay the highest annual rental for the use of the land for a term of five years; provided, that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of § 91-109, shall have the right over and above all others to lease the lands covered by the expiring lease, to the extent that he may take the lease at the highest annual rental offered by any other applicant; provided, that should the highest rental offer received be unreasonably excessive and clearly out of proportion to rentals paid for lands of similar kind and character the board shall fix the rental at which the old lessee may take the lease, upon a fair and reasonable basis within the minimum and maximum limits of appraised rental values as provided in § 91-108."

The situation in this case is, we think, comparatively simple. Counsel for appellant calls attention to the fact appellant offered an annual rental of $126, while Mrs. Greenfield offered only $32.00. We do not, however, think that any abuse in that connection has been shown. The appellant herself testified that lands in the

neighborhood of the land in question are being leased for two, three and four cents per acre. N. R. Greenfield paid but $15 per annum. Mrs. Greenfield offered to pay a rental of approximately five cents per acre, more than the ordinary rental in similar cases, and the rental was finally fixed at $60 per annum, or ten cents per acre. The latter part of Section 91-113, Rev. St. 1931, above quoted, clearly authorized a leasing of the land to Mrs. Greenfield, in her capacity as executrix, at the amount of rental as thus modified.

It is further contended that Mrs. Greenfield as executrix, and the estate of N. R. Greenfield, have no use for the land and cannot derive any benefit from the lease, and that, accordingly, the lease was wrongly awarded. The testimony on this point is substantially as follows: One Joe Almeida, who has lands in the vicinity of the land here involved, and the deceased, were in the sheep business. The deceased furnished the sheep, and the ownership thereof remained in him. The profits derived from the lambs and the wool were shared equally. The number of sheep on hand at the times herein mentioned was approximately 1000 head. Almeida testified that while under the agreement with the deceased he was to take care of the sheep and furnish the feed, part of the feed was actually furnished by the deceased, so as to enable him to take care of the sheep; that he did not have enough feed for the sheep to take care of them without the use of the land here involved, and that the land was necessary for that purpose.

It is argued that since Almeida was to furnish the feed for the sheep, the actual benefit from the lease would accrue to Almeida, and not to the estate of N. R. Greenfield. But we cannot permit any technical point to be controlling in this case. Apparently the agreement as to the sheep was oral. In actual practice Al-

meida never furnished all the feed; part of the feed was at all times furnished by the deceased, and the oral agreement between the parties must be understood in view of that situation. It is quite apparent, that while part of the benefit of the lease would naturally go to Almeida, as it would to anybody else who undertook to run and take care of the sheep, even a sheepherder, the estate receives a substantial and the major portion of the benefit. It was sought to be shown by the appellant that the sheep were in fact the sheep of Almeida, and the records of the assessor were introduced in evidence, showing that the sheep were assessed as the "Almeida sheep." That testimony could not be held to be controlling in the case. There was ample testimony in the record which justified the court in finding that the sheep were the sheep of the estate, and that it needed the section of land here in controversy in order to preserve its property.

The respondent in this case contends that she, as the executrix of the estate of N. R. Greenfield, stands in the shoes of the deceased, and that she, accordingly, is entitled to the same preferential right, mentioned in Section 91-113, supra, as the deceased. The commissioner of public lands, the State Board of Land Commissioners, and the court evidently took this view. The appellant, on the other hand, contends that an executrix, or an estate, has no such preferential right, and that, accordingly, the parties to the case should be dealt with, as though no such right existed. That appears to be the main question in the case, which we have not heretofore decided.

It is asserted herein on behalf of the respondent that it has been the universal practice of the Commissioner of Public Lands and the Board of Land Commissioners to permit an estate, or a representative of a deceased, to exercise the preferential right given by statute, the

same as it would have been given if the deceased had lived, counsel evidently wishing us to take judicial notice of that fact. Judging from arguments made in this court heretofore, it would seem that some of the attorneys in the state seem to be under the impression that this court should take judicial notice of every course of action of every department of the state. We have been very liberal in taking judicial notice of certain courses of action, but we are not prepared to hold that we should de so in all cases. If parties want to rely thereon, it would seem that no great difficulty stands in the way of producing testimony to that effect, so that the point may be controverted and properly presented. We need not decide in this case, as to whether we should take judicial notice of the practice mentioned, although we are inclined to think, on the grounds hereinafter stated, that the practice has been as so claimed.

Section 91-109, supra, provides who is qualified to obtain a lease on state lands. The parties included are persons over 21 years of age, and firms and associations and corporations qualified under the laws of this state. Mrs. Greenfield is not a firm, association or corporation, and the contention of appellant is that she is not a "person" within the meaning of the statute. Authorities to that effect are cited from 32 Words and Phrases, Permanent Edition, p. 204-205, under the title "Person." That counsel for appellant could not have been too confident of his position is shown by the fact that cases to the contrary in the same work are not cited, nor does he attempt to distinguish the cases. There is, of course, no doubt that under some circumstances an estate, executrix or administrator could not be held to stand in the identical shoes as the deceased. As stated in 48 C. J. 1038, "While in its primary sense, it ("person") means a natural person only, the term is a broad one, and the sense in which it is used in any

particular instance may often be ascertained from the context and intent with which it is employed. Thus it has been held to include an "agent * * * an estate." In Billings v. State, 107 Ind. 54, 6 N. E. 914, 7 N. E. 763, 57 Am. Rep. 77, the question was whether or not an indictment charging that the estate of a deceased was defrauded was sufficient to charge a fraud upon a "person." The court stated:

"The estate of a decedent is a person in legal contemplation. 'The word person,' says Mr. Abbott, in its legal signification, is a generic term, and includes artificial as well as natural persons.' 2 Abb. Law Dic. 271; Douglass v. Pacific, etc., Co., 4 Cal. 304; Planters' etc. Bank v. Andrews, 8 Port. (Ala.) 404. It is said in another work that 'Persons are of two kinds, natural and artificial. A natural person is a human being. Artificial persons include (1) a collection or succession of natural persons forming a corporation; (2) a collection of property to which the law attributes the capacity of having rights and duties. The latter class of artificial persons is only recognized to a limited extent in our law; examples are, the estate of a bankrupt or deceased person.' 2 Rapalje & Lawrence Law. Dict. 954."

In Barry v. Minahan, 127 Wisc. 570, 107 N. W. 488, 491, it appeared that the statute provided that "every person having a claim against a deceased person" should file the claim within a limited time. The court held that the term "person" included an estate. In Worthen v. State, 189 Ala. 395, 66 So. 686, 689, it appears that that statute provided that an attorney who gave or promised anything as an inducement to put in his hand a demand of any kind for the purpose of bringing suit or making claim against another person, should be guilty of a misdemeanor. The court held that the term "person" as used in the statute "includes any entity or individuals against which or against whom a liability may be made or established," and hence included a bankrupt estate.

Let us examine our statute in that light. It does not define the term "person". Mrs. Greenfield is a person, though acting in this case in a representative capacity. The statute does not, in terms, forbid the leasing of land to a person who acts in such capacity. Neither does it, in terms, permit it. And counsel argues that the legislature could easily have provided in specific terms that an executrix or administrator should stand in the shoes of a deceased person, if it had desired that that should be the law. That, of course, is true. But legislatures often omit specific directions, depending upon the interpretation of the provisions actually made, in the light of equity and justice. It is generally unfortunate enough for a man to die. It is not, we think, the policy of the law to depress the value of his estate, adding one unfortunate fact to the other. We think it is the policy of the law to preserve it. The lease and the rights thereunder passes, as a property right, to the estate or representative of the deceased, and not to the heirs. During the continuance of the lease, the personal representative of the deceased deals with it the same as the deceased. He or she pays the rental, and occupies it identically as the latter. When the lease, accordingly, expires, he or she is the "applicant" mentioned in section 91-113 supra, when he or she applies for renewal. The right of preference is a property right, perhaps a valuable right, and we can see no reason why it should be destroyed by the death of the lessee, in the absence of a statute to the contrary. It has been held that an ordinary lease may give to the personal representative of the lessee, upon the latter's death, the option of renewal. 32 Am. Jur. 832. That option, though not given in the lease here involved, is given by statute, which is part of the lease. If it had been the policy of the land department heretofore to deny an executrix or administrator the same status as the deceased had in regard to the preferential right pro-

vided by statute, we are inclined to think that the legislature would long ago have made specific provision allowing such right. The omission to make such specific provision will, in all probability, find its explanation in the fact that it was unnecessary by reason of the policy of the land department. We think, accordingly, that the statute should be construed as including in the term "person" the estate of a deceased person and his representative under the law.

The judgment of the trial court is affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.