L. L. SHEEP COMPANY, a Corporation,

*Plaintiff in Error,*

vs.

Z. W. POTTER,

*Defendant in Error.*

No. 2451; November 28th, 150; 224 Pac. 2d) 496)

For the plaintiff in error the cause was submitted on the brief of Mr. W. J. Wehrli of Casper, Wyoming.

For the defendant in error the cause was submitted on the brief of Mr. Edward E. Murane of Casper, Wyoming.

## OPINION

RINER, Chief Justice.

Proceedings in error bring a judgment of the District Court of Washakie County here for review. That judgment sustained an appeal by the defendant in error, Z. W. Potter, from a decision of the State Board of Land Commissioners which upheld a ruling of the Commissioner of Public Lands awarding certain state lands for lease by Potter and other lands for lease by the L. L. Sheep Company, plaintiff in error, from a tract comprising 621.28 acres.

For brevity and convenience the Commission of Public Lands will subsequently usually be mentioned as the "Commissioner"; the State Board of Land Commissioners as the "Board" and the parties to this litigation, the L. L. Sheep Company as the "Sheep Company" and Z. W. Potter by his surname only.

The question to be resolved is whether the District Court was right in sustaining the appeal by Potter from the decision of the Board. The facts necessary to be considered in disposing of this question are briefly these: The Sheep Company and Potter each made conflicting applications for a grazing lease upon 621.28 acres of state lands described as:

"Lots 7, 8 and 9 of Section 3; Lots 5, 6, 7, 8, 9, 10, 11, 12 and 14 of Section 4; Lots 5, 6, 7 and 8; SE¼NE¼ Section 5, Township 41 North, Range 86 West of the 6th Principal Meridian; and

S½SE¼ Section 32; SW¼ Section 33, Township 42 North, Range 86 West of the 6th Principal Meridian, all in Washakie County, Wyoming."

The Commissioner, preliminary to stating his disposition of these conflicting applications for the above described lands pointed out—to summarize the data which he gleaned from the two conflicting applications —that these lands have no improvements thereon; that the Middle Fork of Powder River runs through Lot 9, Section 3, Township 41 North, Range 86 West of the 6th Principal Meridian; that the lands were selected by the state under Section 8 of the Taylor Grazing Act and this was done at Potter's request; that he seeks a grazing lease on the entire 621.28 acres as above described; that he owns about 1120 acres of deeded land in the vicinity of the land applied for, part of which adjoins the land in controversy on the north and south; that he owns 5530 head of live stock, 30 horses and 5500 sheep.

That the Sheep Company which also desires the entire tract of 621.28 acres for grazing purposes owns about 2080 acres of land in the vicinity, part of which adjoins the conflict land on the south and north; that it leases 1480 acres in the vicinity of said land; that it owns 25,100 head of live stock, 100 horses and 25,000 sheep; that each party offers the same annual rental of $124.26 or 20 cents per acre.

The Commissioner then stated:

"Owing to the situation of land holdings of applicants, it is not an easy task to pass upon the applications to lease the land in question. Both applicants are qualified to lease the lands and both have necessary use for the same. There is no old lessee."

He remarked also that he believed it would "inure to the greatest benefit to the state" to allow the application of Potter for Lots 7, 8 and 9, Section 3, Township

41 North, Range 86 West of the 6th Principal Meridian and Lots 5, 6, 11 and 12 in Section 4, same township and range or a total of 137.31 acres; also that the application of the Sheep Company should be allowed for the remainder of the above described land or a total of 483.97 acres.

Potter appealed from these rulings of the Commissioner to the Board which after a full hearing in which both parties presented their evidence and contentions, sustained the action of the Commissioner. Potter appealed from this conclusion of the Board to the District Court with the result noted above.

The Sheep Company makes no complaint about the awarding of the 137.31 acres to Potter but questions the action of the District Court as embodied in its judgment which found:

"That there was a grave abuse of discretion by the Board of Land Commissioners of the State of Wyoming in granting to L. L. Sheep Company application No. 5992-B involving the following described lands in Washakie County, Wyoming:"

The lands awarded to the Sheep Company by the Commissioner and the Board are then described and the judgment also found:

"that Z. W. Potter, plaintiff and appellant herein, should prevail in his appeal from said ruling and decision of the Board of Land Commissioners of the State of Wyoming, and that the matter should be returned to that Board for further consideration, in conformity with this Judgment. AND THE COURT FURTHER FINDS that judgment should be entered for and on behalf of plaintiff and appellant Z. W. Potter, and for his costs herein expended."

It was therefore adjudged that Potter's appeal should be sustained and his application should be "re-

turned to the Board of Land Commissioners for further consideration in conformity with this judgment". Costs were awarded Potter.

It appears that Potter had a Taylor Grazing Act lease obtained from the United States Government on the S½ of the SE¼ of Section 32, Township 42 North, Range 86 West of the 6th Principal Meridian in Washakie County Wyoming; that he relinquished that lease so that an exchange for state land might take place; that he applied to the State of Wyoming for this exchange and paid the cost incident thereto; that after the exchange had been completed Potter applied to the state to lease the full acreage of state land amounting, as above set forth, to 621.28 acres; at that time the Sheep Company also applied to lease the same acreage.

It seems additionally that Potter had used this acreage for some twenty years prior to the date he made the instant application to the State Board therefor, partly through the Taylor Grazing Act lease mentioned above and also by oral leases from a couple of homestead entrymen who merely filed on the land but never finally complied with the homestead entry regulations of the United States Government and as a consequence the land returned to government control and disposition. From the evidence submitted to the District Court it developed that Potter prior to making application to the state for an exchange of these lands had a sheep camp on some land owned by him and noted in the record as Tract 45 consisting of four forty acre piece of land south of and adjoining part of the 621.28 acre tract aforesaid. This Tract 45 had plenty of water on it and was used with the larger amount of 621.28 acreage to run Potter's sheep thereon as a summer range only. There was no water apparently on the land in controversy. The Sheep Company had itself never used the land about which this litigation centers although it

owned land adjacent thereto. Its predecessor, L. L. Gantz, however, does appear to have used the land in question prior to the time of Potter's use thereof.

According to Potter's testimony before the District Court unless he obtains the entire 621.28 acres he could not operate a camp located on Tract 45 aforesaid.

Contrary to this statement Mr. Coffman, the President of the Sheep Company testified:

"Q. What do you say, Mr. Coffman, as to the line that was drawn, let's say by the State Board, in awarding Mr. Potter 137 acres out of the 621, and 483 to the L L Sheep Company, with reference to its being a practical or suitable line of division?

"A. It makes it a practical feeding unit.

"Q. What do you mean, for Mr. Potter and the L L Sheep Company?

"A. For the L L Sheep Company.

"Q. What about Mr. Potter?

"A. Well, he can use what is left.

"Q. I mean, does he have a usable unit in the 397 acres? (including some of Potter's deeded land).

"A. Yes.

"Q. And he hasn't any land at any point to the west of that line?

"A. No.

"Q. His land all lies in the other direction?

"A. Yes."

In addition he testified that Potter's sheep could use for grazing the adjoining stock trails.

So far as can be gathered from the record the only witnesses who gave testimony either before the Board or in the District Court were Potter pro se and Coffman, the President of the Sheep Company. The documentary evidence presented to the court was the record

of the Board supplied on appeal and topographical plat which was offered and received in behalf of the Sheep Company. It is perfectly apparent that before the Board and before the District Court the testimony of the parties to the litigation was more or less in serious conflict.

We have had a number of cases since that of Cooper vs. McCormick, 10 Wyo. 379, 69 Pac. 301 dealing with the powers of the Board and the power of the courts when its decisions were drawn in question before them on appeal. Our latest cases dealing with matters of this kind are: Banzhaf vs. Swan Co., 60 Wyo. 201, 148 Pac. 2d 225; Mayor vs. Board of Land Commissioners, 64 Wyo. 409, 192 Pac 2d 403 and Howard vs. Lindmier, 67 Wyo. 78, 214 Pac. 2d 737, (February 21, 1950). All these cases follow the rule so often announced by this court that the trial de novo as provided for in the statute (Section 24-306 W. C. S. 1945) authorizing an appeal to the District Court from a determination of the Board in the matter of leasing state lands is limited to a decision by the court whether on the facts proven there was "an illegal exercise of the Board's discretion, a case of fraud, or a grave abuse of discretion." It has been indicated also that the discretion of the Board should not lightly be overturned.

In the Howard case supra it was specifically said, too, that:

"Even if the court comes to a different conclusion than that of the Land Board, considering the evidence as a whole, that in a case like that at bar is in no sense conclusive. The court must go further. It must be able to determine that the Land Board might not reasonably, under the same state of facts, have come to a different conclusion."

The Howard case also quotes from a very pertinent decision disposed of in the State of Arizona, Manning

vs. Perry, 48 Ariz. 425, 62 Pac. 2d 693, 694. The following language from that excerpt was emphasized particularly in the Howard decision and we shall again do that here. The Arizona court there very well said:

*"the rule adopted and followed by appellate courts here and elsewhere of deferring their opinions as to the weight and credibility of the evidence to that of the trier of the facts in the first instance should be adhered to in land lease cases."* (Italics supplied).

Applying these rules to the case now bebfore us it is plain that there was no fraud involved, neither was there any illegal exercise of the Board's discretion. Was there a "grave abuse" of that discretion on the part of the Board as discussed in the Howard case just referred to which is our latest pronouncement on that point? The case at bar was not an easy one to determine as the Commissioner very well pointed out. The evidence was in conflict as to the necessary use of the land involved. Can it be fairly said that the Board could not reasonably do as it did in approving the conclusion of the Commissioner. That officer was an exceedingly efficient official and an able lawyer of long experience having previously served creditably as Deputy Attorney General of this state and in other public positions. The Board which has the benefit of aid from the Commissioner, he being its secretary, is quite as well, if not better, qualified as the courts to investigate and to accurately consider and pass upon the conflicting claims of applicants for leases. The land officials have means of obtaining important information regarding what is best to be done in disposing of the difficult factual questions connected with the leasing of state lands. Thereby they can appropriately determine particularly what award will (Section 24-113, W. C. S. 1945) "inure to the greatest benefit to the state", a most important factor in every determination they make.

The Board in the first instance, as trier of the facts involved in this controversy, saw and heard the witnesses herein and the weight and credibility given them by the Board on appeal to the courts should not, as our previous decisions indicate be lightly disregarded. We can not say and we do not think the district court could properly say that the Board could not have reasonably reached a different conclusion than did the court. It evidently adopted the view of the matter advanced by Potter on his appeal, i.e. that he should have all of the lands in question. We do not see that it can be rightly asserted that reasonable minds could not readily disagree as to their proper disposition. Under such circumstances the action of the Board which has the power to lease or decline to lease state lands (Section 3 Article XVIII Constitution of Wyoming; Mayor vs. Board of Land Commissioners supra) should be ordinarily upheld.

In other words we do not think there was here a "grave abuse of discretion" by the Board. That is not saying that the District Court, or that we, if we or that court, were vested with the powers the Board possesses would have disposed of this land as did the Board but neither the District Court nor this court has those powers so far as leasing the lands are concerned. We merely conclude that in a case presenting the difficulties this one does the Board in its present action did not pass without the bounds our previous decisions have indicated should limit it.

The Judgment of the District Court is accordingly reversed with instructions to affirm the action of the Board as brought before that court on appeal. In all fairness to the District Court which disposed of the appeal it should be said that it did not have before it for its guidance what was said in the Howard case supra.

*Reversed with Instructions.*

KIMBALL, J. and BLUME, J., concur.