BERTHA FROLANDER,

*Plaintiff and Appellant,*

vs.

EVELYN E. ILSLEY,

*Defendant and Respondent.*

(No. 2609; December 8, 1953; 264 Pac. (2d) 790).

344

For the plaintiff and appellant the cause was submitted upon the brief of James Munro of Sheridan, Wyoming, and Cecil K. Hughes of Sundance, Wyoming, and oral argument by Mr. Munro.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Otis Reynolds of Sundance, Wyoming.

## OPINION

BLUME, Chief Justice.

This action involves the question as to whether or not a grazing lease for Section 36 and the S½ of Section 25, Township 51 North, Range 64 West of the 6th P. M. in Crook County, Wyoming, was properly awarded by the State Board of Land Commissioners. Evelyn E. Ilsley was the holder of an expiring lease on this property, the lease expiring on February 1, 1952. On November 30, 1951, she applied for a renewal of this lease. In her application she stated her age, which was over 21 years; that she had no livestock; that there was stock water on the land for the month of May; that there were six miles of fence of the value of $800; that she was the owner of adjoining land, specifying part thereof. She attached a letter to her application in explanation, stating that she and her husband Harry P. Ilsley had had the lease on this land for a great many years; that they had a State Farm Loan, secured by part of their ranch (the Ilsley ranch), and that the expiring lease was held as collateral to this loan and the renewed lease would be held likewise; that she and her husband had entered into an installment sale contract with Claude E. Seeley and wife, running for the period of twenty years and that Claude E. Seeley and wife agreed to assume the payment of the State Farm Loan; that in case of default she and her husband would

be obligated to pay the State Farm Loan; that under the circumstances it would be to the advantage of all concerned to have the lease renewed in her name. The applicant offered a yearly rental of $74 or about 7½ cents to 8 cents per acre. On December 28, 1951, Bertha Frolander, hereinafter called the appellant, also applied for the lease on the land and stated that she had livestock consisting of some horses and 135 head of cattle and was the owner of some land; that there was stock water on the leasehold for the period of eight months; that there were 2⅞ miles of fence on the land of the value of $172.50 for which she remitted a check. She offered to pay a yearly rental in the sum of $211.20, being about 22 cents per acre. On February 21, 1952, the Commissioner of Public Lands made his decision awarding the lease to Evelyn E. Ilsley. Thereupon and on March 17, 1952, Bertha Frolander appealed from the decision of the Commissioner to the State Board of Land Commissioners, alleging that the acceptance of the application of Evelyn E. Ilsley would mean a financial loss to the State; that Mrs. Ilsley misrepresented the facts as to stock water and as to the matter of fences on the land; that Mrs. Ilsley does not claim that she is applying for such lands for grazing purposes but merely to protect her financial interest, since the Ilsleys had sold their ranch. In answer to the statements in the appeal of Bertha Frolander, Mrs. Ilsley stated that she is the old lessee and applies for a grazing lease on the land; that she has paid the rental on the old lease and has not violated the provisions of the lease; that she is qualified as a citizen of the State for over 40 years and as such old lessee has a preferred right to renew the lease on said lands; that she tenders and agrees to pay whatever rental the board of Land Commissioners would fix; that she and her husband are the owners of the lands adjoining the lands applied for in the lease; that Bertha Frolander owns no adjoining lands. She

again mentioned the fact of the loan due to the state as heretofore mentioned and again mentioned the contract of sale by herself and her husband to Claude E. Seeley and wife; that the land is used by the Seeleys for grazing purposes and running cattle thereon and that she, the applicant, has actual and necessary use for the lands for the grazing of livestock; that there is not sufficient stock water on the leased land and that it is for the best interests of the State of Wyoming to give her a renewal of the lease according to her preference right.

The parties herein seem to have had a complete hearing before the State Board of Land Commissioners, being represented in person as well as by counsel and all the matters hereinbefore mentioned were fully considered as appears from the report of the secretary of the State Board of Land Commissioners set forth in the record before us. After the hearing of the matter, the State Board of Land Commissioners confirmed the decision of the Commissioner of Public Lands in awarding the lease to Evelyn E. Ilsley, fixing a yearly rental of 12½ cents per acre. Claude E. Seeley also appeared at the hearing and stated that the Ilsley ranch consisted of some 4660 acres which would be depreciated to the extent of fifty per cent if the lease to the lands should not be renewed. The contract between the Ilsleys and the Seeleys was introduced in evidence and the terms thereof will be mentioned hereafter.

There is no substantial conflict as to the facts in this case except only as to the amount of stock water which was on the land. The conflict in that connection arises out of the testimony introduced by Bertha Frolander in the trial of the case in the district court. Evelyn E. Ilsley did not introduce any evidence in her own behalf, although she testified after being called by appellant for cross-examination.

After the decision of the State Board of Land Commissioners, an appeal was taken to the district court of Creek County, Wyoming. After the introduction of testimony on behalf of Bertha Frolander, the court entered judgment confirming the decision of the Commissioner and the Board. Bertha Frolander hereafter will be referred to as the appellant and Evelyn E. Ilsley either as appellee or by her name. When the term Commissioner is used, it will refer to the Commissioner of Public Lands and when the term Board is used, it will refer to the State Board of Land Commissioners. The particular contentions of the parties herein will be discussed in the course of this opinion.

Before discussing the questions involved in this case, we should mention the fact that one of the counsel for appellant, in his oral argument of this case, stated that he realized that he had the "laboring oar" in trying to persuade us of the correctness of his position, because of the fact that Mrs. Ilsley is the widow of Judge Ilsley, who, before his death, was our associate in this court. We are not devoid of the feelings of friendship common to mankind, and in case of grave doubt, those feelings might tip the scales in deciding a case. But we are not unmindful of the fact that we have, under the constitution, a mandate that without fear or favor, we must, and we shall, decide the cases that come before us according to the law of the land as near as human frailty permits that to be done, and we are quite certain that our former associate would not, if living, have us act otherwise.

We shall in the first place consider the error assigned herein that the trial court did not comply with the request of the appellant, timely made, to make findings of fact and conclusions of law. We examined this question with considerable care in Koon v. Sampson, 61 Wyo. 498, 159 P. (2d) 366 and Bruch v. Benedict, 62

Wyo. 213; 165 P. (2d) 561, and we held substantially that when all the evidence submitted to the district court is before us and we find, after examination of the evidence, that the judgment is correct, then the refusal to comply with the request above mentioned cannot be considered prejudicial error. That is substantially the case before us.

The statutory provisions pertinent in this case are embodied in Section 24-113, W.C.S. 1945, reading in part as follows:

"All state lands leased by the state board of land commissioners for grazing purposes shall be leased in such manner and to such parties as shall inure to the greatest benefit to the state. Except as herein provided, preference shall in all cases be given to applicants who are bona fide resident citizens of the state qualified under the provisions of Section 91-109 (§ 24-109), as amended, and to firms, associations or corporations authorized to transact business in the state, having actual and necessary use for the land and who are the owners, lessees or lawful occupants of adjoining lands, who offer to pay an annual rental for the use of the land for a period of ten (10) years, within the minimum and maximum limits of appraised rental value as provided in Section 91-108 (§ 24-108) ; provided, that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of Section 91-109 (§ 24-109), shall have a preferred right to renew such lease."

The former statute (§ 91-113 R.S. 1931) provided that the greater revenue to the state should be considered. That clause was left out of the present statute, although, of course, the greatest revenue might still be involved in the greatest benefit. But the change in the statute seems to show that the legislature meant to increase the discretion of the Board. Mayor v. Board of Land Com'rs., 64 Wyo. 409, 192 P. (2d) 403. The

provisions particularly applicable herein are those in reference to the greatest benefit to the state and the proviso referring to the preference right of renewal of a party who has an expiring lease. Kerrigan v. Miller. 53 Wyo. 441, 84 P. (2d) 724, 729. The appelleee herein has such expiring lease and it cannot be questioned that she is qualified as provided by the statute. She has paid the rental thereon when due and has not violated any of the provisions of the lease. In speaking of the preference right of renewal of one who has an expiring lease, we said in Kerrigan v. Miller, supra, as follows:

"We think that the legislature has in this instance distinctly limited or regulated the board's discretion. It must take into consideration the right given by the Statute. Wyodak Chemical Co. v. Land Commissioners, supra, and cases cited. The right to preference is a *very substantial* right. Manning v. Perry, supra. The statute clearly shows that the legislature meant to make it the policy of the state to recognize equities in those who have built up a ranching business in the state which should be considered in passing upon applications for renewal of expiring leases, and that the absence of such policy would be injurious if not destructive to that industry. Vesely v. State, supra; Manning v. Perry, supra. The commissioner and the board must give effect to that policy. If such general benefit is equal in the case of two or more applicants to the land, the right of renewal which one of them may have must prevail. We think that in order that the board would be warranted in rejecting the right of renewal, it should reasonably clearly appear that it is for the general benefit to the state and its people to do so."

This statement was approved by the Supreme Court of Arizona in the case of Ehle v. Tenney Trading Co., 56 Ariz. 241, 107 P. (2d) 210, 212. It is quite apparent, therefore, that the preference right of renewal should not be rejected on slight, trivial or technical grounds, but only when the board finds on sound grounds, that the greatest benefit to the state would not be subserved

by granting it. The board has a large discretion, which can be overturned only if there is a violation of law, or fraud, or illegal exercise of discretion, or an abuse of discretion. Howard v. Lindmier, 67 Wyo. 78, 214 P. (2d) 737; Banzhaf v. Swan Co., 60 Wyo. 201, 148 P. (2d) 225; L. L. Sheep Co. v. Potter, 67 Wyo. 348, 224 P. (2d) 496, and other cases cited therein.

The appellee in her application for a lease stated that there is stock water on the land in dispute herein during the month of May. She also offered to pay the sum of $74 per annum, which was the same amount that she had paid under the old lease, and which was at the rate of 7½ to 8 cents per acre. Land in Crook County with stock water required, as counsel say, in accordance with the rules and regulations of the State Board of Land Commissioners, a minimum fee of 10 cents per acre and a maximum fee of 28 cents per acre. A great deal of testimony was introduced by appellant as to the amount of stock water on the land. The point now made by counsel for appellant is, that inasmuch as appellee in her application did not offer to pay the minimum rental of 10 cents per acre, she thereby violated the statute and the rules and regulations of the board, and hence, under the ruling of Walls v. Evans, 38 Wyo. 103, 265 P. 29, 30, is barred from having her lease renewed and that she lost her preference right. Inasmuch as so much stress has been laid on this matter, we shall discuss it with some degree of thoroughness. Walls v. Evans, supra, involved a rule of the board reading as follows:

"In the granting of mineral prospectors' leases, where the land is not leased, the lease is granted to the first duly qualified applicant who presents his application accompanied by the rental fees."

We upheld the judgment of the district court in finding that since Walls was the first applicant, whose appli-

cation was accompanied by the required fee, he was entitled to the lease. It is quite apparent that the case is not in point. There the rule of the board gave a preference right to the first man who complied with the rule. It is similar to a case coming under the mining laws that he who first complies with the rules has the first right. The statutes and rules involved in the case at bar do not give any preference right to the first party complying therewith. The board fixes the rental. It may reject any offer that is made, and demand a higher rental, at least one not exceeding the maximum rental fixed by rule. The case is more like Cooper v. McCormick, 10 Wyo. 379, 408, 69 P. 301. In that case there was an omission to state that the applicant had a preference right. He offered to amend his application, as appellee practically did in the case at bar. The board was fully informed of the actual facts, and the court held that the application should not be rejected on account of the defect in the application. Furthermore we cannot see that the appellee violated any rule or statute. § 24-111 W.C.S. 1945, states that the application must be accompanied by "the full amount of the first year's rental offered." Appellee complied with this statute literally since she offered $74 for the first year's rental and paid it. Counsel for appellant refer to § 24-113 of the statutes that the party there mentioned should offer a rental "within the minimum and maximum limits of appraised rental value." The provision refers to parties other than those who have a preference right. That has been the construction put upon the proviso by the board. In Brown v. Wintermute, 59 Wyo. 254, 260, 139 P. (2d) 435, 436, it appears that the Board formerly printed on the application form for lease the following:

"IMPORTANT. *If you are not the old lessee* this is your final rental offer, be sure it is all you wish to pay

for the land and is equal to or above the minimum rental fixed by the Board." (Italics supplied.)
This shows that the party having an expiring lease was not considered to come within the provision here mentioned.

Again the rule as to stock water is too indefinite to serve as a guide. We do not know whether it means that there is water for stock for one day of the year, ten days, thirty days, six months or a whole year; whether the water should be sufficient to water one head of cattle, or ten or fifty or one hundred or five hundred. Mrs. Williamson, a witness for the appellant, and evidently a wholly unprejudiced witness, stated that formerly there was considerably more water on the land here involved than there is now; that she went all over the land in 1951 and there was no water on it at least commencing with July. It would seem that whether or not there is stock water on a leasehold within the scope of the intent of the board must largely be left to be determined by the commissioner or board in each individual case and to apply a penalty in the absence of a more specific rule because the application for a lease was not accompanied by a fee which is finally determined to be the fee that should be paid, would hardly be proper in a case in which it is unknown what the ultimate determination of the commissioner or board will be. Furthermore, the board had all the facts before it when the lease was awarded. It was not deceived in any way. It determined that there was stock water on the land within the meaning of its rules and fixed the rental at 12½ cents per acre and the appellee offered to meet this rental. In view of what we have said, it is clear the objection here considered must be overruled. See Brown v. Wintermute, supra, and Cooper v. McCormick, supra.

Appellee in her application for renewal lease stated

that there were six miles of fence on the lands whereas there were only four miles of fence. It seems that the land was all fenced originally but some of the fence had been torn down since the time the Seeleys bought the land, of which appellee was not aware. Counsel for appellant say that appellee's statement, which they characterize as false, should deprive her of the right to have a new lease. The matter is not of sufficient importance to warrant the drastic remedy which counsel propose. The Board of Land Commissioners was fully advised of the facts before the lease was finally let. Brown v. Wintermute, supra. The appellant herein stated in her application that there were 2 and $\frac{7}{8}$ miles of fence, and her counsel admit that there were four miles thereof. Obviously if the misstatement of appellee should deprive her of a new lease by reason of her misstatement, the appellant should be deprived of any lease because of hers.

Appellee in answer to the question in the application to describe land which she owned enumerated some of the land composing the Ilsley ranch and other lands. Counsel for appellant characterize this statement also as false. The legal title to the lands was in the name of Harry P. Ilsley, the husband of the appellee. The statement made by appellee was, of course, not accurate, at least legally speaking, in view of the fact that the record title was not in her. However, the contract with the Seeleys provided that the purchase price was due to appellee and her husband jointly. So the foregoing statement to be absolutely accurate should have been to the effect that she had an interest in the lands set out. The contract was in evidence before the board. So far as the record shows the parties, at the time of the hearing before the board, did not consider the inaccurate statement misleading or of any importance, since the record made by the Land Commissioner does

not even mention that fact. The inaccurate statement in the application for lease did not deceive the board, since the facts were before it, so for us to hold that appellee should forfeit her right of preference by reason of the inaccuracy would be to hold that a forfeiture should be declared on account of a technicality. We cannot do that. Brown v. Wintermute, supra. A wife's feeling that she owns what her husband owns hardly merits such a holding.

We now come to the contention that the appellee had no need for the leasehold, i.e., no actual and necessary use for it. More stress is perhaps laid upon that contention than on any other. Counsel for appellant argue in substance that appellee has no sheep or cattle; that the land in which she had an interest had been sold; that there is no likelihood that she will want to use the land for grazing her livestock on the leased land and so it is as clear as the light of day that she has no need for the lease. The trouble is that counsel interpret a preference right more narrowly than is justified under our statutes. We have mentioned and discussed the question of need for a lease in a number of cases, as for instance Hogan v. Greenfield, 58 Wyo. 13, 122 P. (2d) 850. We have never decided and no applicable statute requires, specifically at least, that a holder of an expiring grazing lease, in order to have a preference right of renewal must necessarily make actual use of the leasehold by livestock personally owned. Nor have we determined what is included or excluded in the concept "need" or "actual and necessary use" for the land, so that the question before us is new, although we closely approached it, inferentially at least, in Jassman v. Wulfjen, Wyo., 257 P. (2d) 334, in which a party with a preference right was awarded a new lease, though it was apparent that she had no livestock and had leased her own land to another, and the need of the tenant was

treated the same as the need of the landlord. In the recent case of Stauffer v. Johnson, Wyo., 259 P. (2d) 753, we held that for a lessee from the state to permit pasturing on the leased land by the livestock of another for a consideration, did not prevent the state from granting a renewal lease pursuant to a preference right of renewal. In Kerrigan v. Miller, supra, Kerrigan was the holder of a lease on a school section. He owned no cattle and no land and had no financial or other interest in the lease. He contended that he had an absolute right to renewal. We held that he did not. The commissioner and the board awarded half of the leasehold to another, but gave a renewal of half of it to Kerrigan. If the case shows nothing else, it shows that heretofore no such strict interpretation has been put upon the preference right of renewal, as counsel for appellant would have us do in this case. In addition to what we have said, it involves a broad, general policy. Sales of land such as the Ilsleys made to the Seeleys may be made frequently. Leases for school and state lands are likely to play an important part in connection with such transactions and are likely to play an important part for many years to come. Public policy favors freedom of trade and freedom of bargaining, if legal. So that, if in this case we should hold that vendors are not able to fully protect themselves and their interest in such transactions, by any method that is legal, at least in so far as is not contrary to the best interest of the state, then we should be laying down a rule favoring restraint of legal trade and restraint of free legal bargaining, and such a rule is not favored by the law. So in the further discussion of this case we must constantly bear this fundamental fact in mind and distinguish the case before us from other cases.

(a) The Ilsleys sold the land for $69,000 in November 1949, the land consisting of some 4660 acres of land

including the use of the leased land in question herein as part of the bargain. This land had been connected with the Ilsley ranch or part thereof for many years and was considered as an integral part thereof. The vendees in the above sale assumed two mortgages, including one to the state in the sum of $4,000, the two mortgages amounting to some $10,000, leaving due the sum of $50,000 to be paid in installments over the period of twenty years, the payments to be made each year being about the sum of $2,642. The contract provided for the usual forfeiture in case the vendees should default in their payments. Assuming that at the time the lease herein was awarded to the appellee, the vendees had paid the installments then due, the amount still remaining due was approximately $44,000, aside from the personal liability of vendors on the two mortgages of about $10,000. It may be, of course, that the vendees will never default in any of their payments, but the parties did not regard that as certain, nor can we, in view of this changing world and amid the constant change of values with which all of us are so familiar, regard it as certain. Common experience suggests that it would be nothing less than folly for appellee not to keep her property interests, which of course includes the lease, intact in the meantime as nearly as possible. In the very nature of things the lease in question is of considerable value in connection with the Ilsley ranch although the exact amount thereof has not been shown. To take the lease away from appellee would heighten the possibility of defaults in the contract of sale. And if Seeley was correct in his statement that the Ilsley ranch would be depreciated fifty per cent if the lease were lost that would still more heighten the possibility of future defaults in the payments. Hence it was of vital importance to appellee that the lease remain part of the Ilsley ranch to avoid depreciation of the latter in value and to say that not-

withstanding that she had no need for the lease, in a broad sense at least, is simply a complete contradiction in terms. See Hawks v. Creswell, 60 Wyo. 1, 144 P. (2d) 129.

(b) It would seem that it should not be necessary to say anything more. But counsel for appellant appear to be so positive that their contention is correct that we shall discuss the matter further. Let us analyze the situation before us from another angle. The original lessee might have assigned the lease to the Seeleys and in order to protect the appellee's interest she could have annexed to the assignment a proviso that in case of default in the payments on the contract for sale, the lease should ipso facto revert to the assignor. We can see no reason why such an assignment, containing such a proviso, should not have been approved by the State, particularly in view of § 24-113 W.C.S. 1945, that "no such approval shall be arbitrarily or unreasonably withheld." With the approval given, the Seeleys would then have been lessees with a preference right. Since they are running some 700 head of cattle and are using the land for grazing purposes, we cannot think of a valid reason why they should not have been given a new lease in accordance with the preference right. The appellant herein then would have no reason to expect to have any lease awarded to her.

Instead of adopting the method above outlined,—perhaps because the original lease was in the hands of the state for security — the parties adopted a different method. The appellee retained the lease with an agreement to procure the renewal thereof, if possible, and to give the right to the Seeleys to put the lease-hold to use for their cattle. The object and aim of this method was identical with that of the first method above mentioned, namely, in the main, the protection of appellee in case of default in the payments to be made by the

Seeleys. Since that is true, it is difficult to see why the result to the appellant should have been different than if the first method had been adopted. Yet the contention of appellant is essentially (though not in so many words) that the appellee adopted the wrong method in order to protect her interests; that she should have adopted the first method above mentioned and by choosing the particular method she did, she thereby lost her preference right. But there is nothing wrong with the method adopted. It was not illegal. The appellee still owned one-half of about 80% interest in the Ilsley ranch of 4660 acres of land. She ought to have the right to protect that interest if possible and pursue any legal means in doing so. And for that protection, it was necessary that the ranch interest be kept intact as already heretofore mentioned and that that might be done, it was vital to have her lease renewed, pursuant to her preference right. The greatest benefit to the state was not in conflict with that preference right. The state held the old lease as security and will hold the new lease for the same purpose. The state is the final judge as to whether or not it is necessary to hold the lease for security. Furthermore, in the absence of other factors of which we are not aware, it cannot be contrary to the greatest interest of the state to have the leasehold grazed by 700 head of cattle owned by the Seeleys rather than by 135 head of cattle owned by appellant. In order not to be misunderstood, we should add that we do not say that, in the proper case, the board lacks the right to take into consideration in leasing land as to who should, for the greatest benefit to the state, be permitted to use the leasehold. We know of no factors in this case which would require the denial of the preference right of appellee. True the benefit of the lease to appellee will partially go to the Seeleys. But the statute does not, in terms at least, require that appellee must necessarily use the leasehold herself by

means of her own livestock and we have no right to read such a provision into it. In the case of Jassman v. Wulfjen, supra, the lease of the land benefited a tenant as well as the landlord to whom the land was leased pursuant to a preference right. In Hogan v. Greenfield, supra, we held that though a large part of the benefit of a lease inured in favor of another that was no reason why a new lease should not be issued to Mrs. Greenfield pursuant to a preference right, when she was benefited by the lease to a substantial extent. In these two instances the lessee made use of the land through parties who might be likened to an agent. Appellee, too, may be said to make use of the leasehold through an agent, namely, the Seeleys. The principal involved is much the same. In short we have before us a case in which the greatest benefit to the state is not adversely affected by granting a lease to appellee and to hold that she should not be awarded the lease in question, would in effect mean that the method adopted to protect the vendors in the sale of the Ilsley ranch was wrong; that the citizens of this state, in so far as preferential rights to leases are concerned, adopt such a method, though perfectly legal, at their peril. That, we think, would be a restraint upon free legal bargaining which the public interest does not seem to require.

(c) Let us repeat part of the quotation from Kerrigan v. Miller, supra, relating to a preference right: "We think that in order that the board would be warranted in rejecting the right of renewal, it should reasonably clearly appear that it is for the general benefit to the state and its people to do so." So it is not a question whether the appellant would benefit more than the appellee, but the general public benefit is to be considered in conjunction with the preference right of renewal. If what we said in the foregoing case is correct, then clearly we would not be justified in reversing the

decision of the board, which, presumably at least, concluded that the greatest benefit to the state would be subserved by granting the lease to appellee herein.

We have, accordingly, tested the main contention of appellant from three different viewpoints (a, b and c) and each of them is inconsistent with the contention that appellant is entitled to the lease here in question as a matter of right. If it were the intention of the legislature to limit the preference right of renewal more strictly than we have heretofore held and to limit it to a case where the holder of the lease makes actual use of the leasehold by livestock personally owned, it should make a clear provision to that effect so that the parties to a contract of sale and purchase, such as here involved, would not be deceived and would know that they must make their contracts in the light of such provision. It hardly behooves this court, on its own initiative, to depreciate the value of the numerous ranches in this state, the owners of which have heretofore based such value in part on the fact that a lease from the state has been connected therewith. The case of Kerrigan v. Miller, supra, was decided in 1938. The contract of purchase and sale here involved was entered into in 1949. The parties thereto, instead of having to find that our decision did not mean what it purports to mean, had the right to rely thereon without incurring the peril that by their contract they would necessarily lose a preference right and have the leasehold severed from the land with which it had been connected for a period of 25 years.

We find no merit in the contention that to grant a renewal of the lease in this case would be tantamount to recognition of an unqualified right of renewal (Kerrigan v. Miller, supra) and would violate the Act of Admission, the Constitution of the United States and the Constitution of this State.

School lands are, it is true, held in trust by the state, and the trust must be administered wisely and prudently so that its aim may be reasonably attained. But prudence and wisdom do not, we think, require that it must be so administered as to destroy or diminish the value of the ranching interests of the state which form a large part of the source from which our schools are nourished. We see no reason why the interest of the trust and that of the ranchers in the state may not be harmonized so as to result in the best interest of the state as well as of the schools. The board, under the direction of the legislature, is at least as competent to do that as is the court.

We do not think that any law or rule has been violated, no fraud has been perpetrated and we cannot say that in granting the lease to appellee there was an exercise of illegal discretion or any abuse of discretion. The judgment of the district court must be accordingly affirmed. It is so ordered.

*Affirmed.*

RINER, J. and HARNSBERGER, J., concur.