**SNAKE RIVER LAND COMPANY,**
Appellant (Plaintiff below),

v.

**STATE BOARD OF CONTROL,** Appellee
(Defendant below).

No. 4652.

Supreme Court of Wyoming.

Feb. 28, 1977.

Jack R. Gage, Hanes & Gage, Cheyenne, signed the brief and appeared in oral argument for appellant.

V. Frank Mendicino, Atty. Gen., Jack D. Palma II, Asst. Atty. Gen., and Robert D. Snyder, Legal Intern, Cheyenne, signed the brief and Jack D. Palma II appeared in oral argument for appellee.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

RAPER, Justice.

Appellant Snake River Land Company appeals the judgment of the District Court affirming Board of Control denial of its Petition to Cancel Permit to Divert and Appropriate the Water of the State of Wyoming No. 10160—Love No. 1 Ditch, following a full hearing before the Board of Control. Snake River had filed its petition with the Board following regular notice by the Board that unless a protest was received, Permit No. 10160 would be adjudicated. We will also affirm.

The questions presented by Snake River for consideration of this Court, as we see them, are as follows:

1. Was the action of the Board of Control in conformity with statutory law and consistent with prior holdings of this Court?

2. Were the Board's findings of fact supported by substantial evidence?[1]

On September 15, 1910, John Love made application for a permit to divert and appropriate water from the West Fork of the Little Snake River. On October 6, 1910, in accordance with the then existing statute, the state engineer granted Love's permit subject to the following conditions: (1) construction of proposed work shall begin within one year from the date of approval; (2) the time for completing the work shall terminate on December 31, 1912; (3) the time for completing the appropriation of water for beneficial use shall terminate on December 31, 1913; (4) the amount of the appropriation shall be limited to one cubic foot per second of time for each 70 acres of land reclaimed on or before December 31, 1913. A notice of completion of the Love No. 1 Ditch was filed with the state engineer on September 13, 1911.

The appropriator and his successors in interest did nothing to establish record proof of completing the appropriation or seeking adjudication until January 5, 1972. On that date, a notice of completion of beneficial use was received by the state engineer from Stewart Quealy, successor in interest to John Love. Quealy's notice of completion included six affidavits, which cumulatively represented that the lands described in the permit had been seasonably irrigated from 1910 continuously to the date of their execution.

Based on the affidavits, a final proof of appropriation was prepared and forwarded to the superintendent of water division I for inspection and advertising, as provided by § 41–211, W.S.1957, Cum.Supp.[2] The notice to appropriators of waters was advertised in the Rawlins Daily Times for a total of 56 acres. In response, on March 27, 1973, Snake River filed a petition for declaration of abandonment for a period of over five full years. Following a public hearing in November, 1973, the Board denied the petition for abandonment but did agree that the land irrigated should be reduced to 36.5 acres as a result of an on-the-ground inspection. No appeal by any party is taken from the denial of total abandonment and the reduction in acreage. The abandonment proceedings, including the transcript of testimony were in a proper fashion administratively noticed and are part of the total record before us. Subsequent to abandonment denial, Snake River filed its petition to cancel Permit No. 10160, Love No. 1 Ditch, and deny adjudication. A hearing was scheduled before the Board for May 10, 1974, and was at that time continued until November 21, 1974.[3] Mr. and Mrs. Quealy, although the current title holders of record of the land irrigated by the Love No. 1 Permit, had sold the land on contract to Mr. and Mrs. Mattern. On Feb-

1. The appellant frames the issues as follows: "Did the Love Permit expire by its own terms on January 1, 1914?
"If the answer to one is yes, was the reinstatement procedure utilized by the State Engineer proper?
"If the answer to two is yes, was that procedure correctly complied with in this case?"

2. The state engineer followed the procedure in effect at the time the 1972 proof was submitted by Quealy. Between 1910 and 1925, the Board only needed to be satisfied that the water had been appropriated before issuing a certificate of appropriation. No inspection or advertising was required. W.C.S.1910, § 738. In 1925, the section took on substantially the form in which it now exists. Section 1, Ch. 118, S.L.Wyo. 1925.

3. By some unusual view of the appellant, no notice of the May 10, 1974 proceeding before the Board of Control was given the appropria-

tors, appellants asserting at the time, it was solely a matter between the Board and the appellants, who had filed with the Board a petition to cancel permit and deny adjudication of the water right. No one was more interested than the existing owners of the land to which the water was applied! We observe that the petition has no certificate of service attached showing delivery of a copy to the appropriators and current land owners. The transcript shows they learned of it rather accidentally, appeared unprepared, thereby necessitating the continuance. To add to the impropriety of such a concept, the real parties in interest felt compelled, at the suggestion of appellants, to enter this proceeding by way of a motion to intervene! We take a dim view of failure to give notice of proceedings to those concerned and whose interests would be affected.

ruary 25, 1975, following hearing, the Board entered its order denying Snake River's petition to cancel and deny adjudication. It is from the denial of that petition, Snake River appeals. We find no certificate of appropriation in the record but presume that will follow.

■ Although the statute in effect in 1910 when Love first filed his application for a permit to divert and appropriate water (§ 727, W.C.S.1910 [4]) did not require the filing of a notice of application to beneficial use, subsequent amendments to the

statute in 1917, 1919, 1921 and 1923,[5] as well as the current statute,[6] contain such a requirement. Based on the apparent failure of Love to file such a notice within the currently required time, Snake River now asserts adjudication of the Love No. 1 Permit should be denied and failure to do so is out of conformity with Wyoming statutory as well as case law. We disagree.

Even though there is, in § 41–206 of the current law, a requirement that a permit holder submit proof of appropriation " * * * within five years after the date specified [in

---

**4.** Section 727, W.C.S., 1910, enacted in 1909, provided as follows:

"Any person, association or corporation hereafter intending to acquire the right to the beneficial use of the public water of the state of Wyoming shall, before commencing the construction, enlargement or extension of any ditch, canal or other distributing works, or performing any work in connection with said construction, or proposed appropriation, make an application to the state engineer for a permit to make such appropriation. Such application must set forth the name and post-office address of the applicant, the source of the water supply, the nature of the proposed use, the location and description of the proposed ditch, canal or other work, the time within which it is proposed to begin construction, the time required for completion of construction and the time required for the complete application of the water to the proposed use. Any person who shall willfully divert or use water to the detriment of others without compliance with law shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in a sum not exceeding one hundred dollars or imprisonment in the county jail for a term not exceeding six months, or by both such fine and imprisonment; and the possession or use of water, except when a right of use is acquired in accordance with law, shall be prima facie evidence of the guilt of the person using it."

**5.** Section 1, Ch. 119, S.L.Wyo.1917; § 1, Ch. 18, S.L.Wyo.1919; § 1, Ch. 23, S.L.Wyo.1921; § 1, Ch. 7, S.L.Wyo.1923.

**6.** Section 41–206, W.S.1957, Cum.Supp., provides as follows:

"Whenever the state engineer places his endorsement of approval on any application for a water permit, he shall require that actual construction work be commenced within the time set by him in the permit and he shall require that construction be completed within the time set by him in the permit. The time set for completion shall not exceed a period

of five years after the date of approval of application. In the case of an application for a ditch permit, he shall further require that the application of the water to beneficial use must be completed before the date which he shall specify, and which shall not be earlier than the date specified for the completion of construction; and that final proof of appropriation must be submitted within five years after the date specified for the completion of the application of the water to beneficial use. He may limit the application to a less period of time for the completion of construction and application of water to beneficial use than is asked for in the application. For good cause shown, the state engineer may at any time, or from time to time, before the date of expiration, extend any or all of these periods. An extension of time for compliance with any of the specified requirements, except as to the requirement relating to the starting of work, shall be construed to automatically extend for a like period the time for compliance with any of the specific requirements in relation to which the time expires thereafter. Default by the holder of the permit in any of the specified requirements shall work a forfeiture of the water right involved. The state engineer may upon such default cancel the permit. The state engineer shall, by registered mail, with a return receipt requested at least three months before default in any of these requirements shall be operative, notify the permit holder, at the post-office address given by him when the time allowed will expire. If the permit holder cannot be reached by registered mail, or if the address of the permit holder is unknown, the state engineer shall publish notice of the default for three weeks in a newspaper of general circulation published in the county, or in case there is no newspaper of general circulation published in the county, then in a newspaper published in the State of Wyoming and in general circulation in the county, the last publication to be at least two months before cancellation of the permit."

the permit] for the completion of construction and application of water to beneficial use, * * * " there is also provided that before forfeiture can occur, the state engineer "shall" notify the permit holder of his default by registered mail or publication before cancellation of the permit. No such notice has been given the original appropriator or any of his successors in this instance. On the date the permit was issued, there was no particular period limit required by the 1910 statute for submitting proof of appropriation and the permit itself contained no deadline in which such action should be taken, as now provided.

It must be realized that the questioned permit was issued early in the development of Wyoming water law; all of its problems could probably not be foreseen at that time. While ideally efficient management of the State's water is desirable, because of statutory or administrative shortcomings, a water user should not be required to suffer the loss of a valuable water right when there has been beneficial use.[7] We think § 3, Art. VIII, Wyoming Constitution, provides the touchstone when it provides:

> "Priority of appropriation for beneficial uses shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interests."

We entertain no doubt that the water was applied to beneficial use immediately following the issuance of the permit and continuously thereafter. While the appellant attempts to blow up a storm, urging the irregularity of some affidavits which the state engineer would have accepted as proofs of appropriation in the absence of the hearing demanded by appellants, the fact remains that the matter was heard, with live testimony, with every right of cross-examination and rebuttal. Between the testimony taken at the abandonment proceeding, administratively noticed, and that taken at the hearing on the petition to cancel permit and deny adjudication, the evidence of appropriation of water to beneficial use, favoring the permit holder, is substantial. We have been shown no public interest demanding denial.

One witness, born in 1904, remembered the area well and her testimony is most lucid and remarkably consistent in the light of the time that has expired. She was raised as a neighbor to Love. She became and was well acquainted with the Love homestead in that she helped her father with their cattle in that vicinity; in fact, their ranch headquarters were on the Love property and they used the irrigated ground in question for pasturing their horses. She observed her father turn water from the Love Ditch onto the land where it was used mostly for pasture, though some hay was stacked. She recalled the irrigation works. She "cowboyed" for her father and was in the immediate locality from 1914 until 1924. She helped her father again on the same ranch in 1930 and 1931. After that, she along with her husband and children made annual fishing trips into the vicinity and her memory through the years has been kept alive.

The land involved was transferred by Love to a person named Rasmussen. An employee of Rasmussen testified that he went to work there in 1924. Among his duties as a ranch hand, he lived on and irrigated the land in question every year thereafter. He described the ditches, the field laterals, the culverts, his methods of irrigating and the areas to which he applied the water. He worked there through the summer of 1970.

7. This is not a new problem. Unfortunately, there are probably other outstanding water rights for which no proof of appropriation appears. See the penetrating article by Michael V. McIntire entitled, "The Disparity Between State Water Rights Records and Actual Water Use Patterns," V Land and Water Law Review 23. The author also recognizes that even the holders of very old permits must be given an opportunity to complete their works before default because of the notice requirement. Page 30. Nor does the author blame the state engineer. Insufficient personnel, insufficient funds, inadequate legislation all substantially contribute. While we neither approve nor disapprove Mr. McIntire's views, we do appreciate his recognition of the problem.

The ranch was acquired by the Quealys in 1963. Mr. Quealy testified to his knowledge and working of the land. Dr. Mattern, present owner under a contract, testified to his working of the land and the irrigation system since 1972. Other evidence indicated irrigation works of long standing, and vegetation growth showed irrigation over a period of many years.

As we examine the proceedings, there is but slight conflict in the evidence. Even if the evidence showed a substantial conflict, we would be restricted by the well-known rule that we cannot lightly disregard the weight and credibility given witnesses by an administrative body. *L. L. Sheep Company v. Potter,* 1950, 67 Wyo. 348, 224 P.2d 496. There was such relevant evidence that a reasonable mind can accept as adequate to support a conclusion. It fits the definition of substantial evidence. *Howard v. Lindmier,* 1950, 67 Wyo. 78, 214 P.2d 737. With these standards in mind, we hold the evidence was substantial that the water was, in fact, put to beneficial use and has been beneficially used for the reduced acreage of 36.5 acres ever since at least 1911, when the original appropriator gave notice that construction of proposed works had been completed.

Since the matter was disposed of by full-blown trial-type proceedings, any consideration of inadequate affidavits first submitted to prove beneficial use would be superfluous and we need not answer any question as to whether use of affidavits satisfies the requirement of proof for adjudication.[8] They are really of little use when a protest to granting of a certificate of appropriation is filed. The matter must then go to hearing. We need not decide whether affidavits are sufficient in absence of a protest. The statutory requirement is only that, "Proof shall be made by appropriators under oath before any such officer and upon forms furnished by the state board of control. For the purpose of receiving such proofs as appropriators may wish to submit, * * *" the water division superintendent makes an annual scheduled trip and such proofs can be submitted at that time or at other expedient times. Section 41–211, W.S.1957, Cum.Supp. That is the current provision. There was nothing equivalent, as can be seen in § 738, W.C.S. 1910,[9] in effect when the permit was issued. The present owners have, however, furnished such proof under oath by hearing. What has really transpired in this entire proceeding, including the abandonment hearing, is proof of appropriation to beneficial use as part of the adjudication procedure leading to issuance of a certificate of appropriation. The findings of the Board are adequate and supported by substantial evidence for that purpose.

We find in the record use of the term "reinstated" when dealing with the permit under consideration. That permit was never cancelled nor had it expired. Under the law and facts prevailing, it has always been and still is in good standing. We know of no requirement that it be reinstated.

The appellants are too late with too little. *Laramie Rivers Co. v. Le Vasseur,* 1949, 65 Wyo. 414, 202 P.2d 680, is in point. The

---

8. "Adjudication" of a water right is simply a determination by the Board of Control that water has been and is being beneficially applied to the land to the extent and by the means set out in the permit. Section 41–213, W.S.1957, Cum.Supp., and its statutory ancestors. It is the final act in perfecting a water right. The date of priority of appropriation in the case before us follows as a matter of law by operation of § 41–212, W.S.1957, providing "The priority of such appropriation shall date from the filing of the application in the engineer's office."

9. Section 738, W.C.S.1910, provided:

"Upon it being made to appear to the satisfaction of the board of control, that any appropriation has been perfected in accordance with such application, and the endorsement thereon by the state engineer, it shall be the duty of the board of control, by the hand of its president, attested under the seal of the secretary, to send to the county clerk a certificate of the same character as that described in § 778, which said certificate shall be recorded in the office of the county clerk as provided in said section."

state engineer in that case issued a permit to the Wyoming Development Company in 1898. Though the water was applied to beneficial use, the water right was not adjudicated. In 1938, an action was brought by Laramie Rivers Company on technical objections seeking to enjoin further use and for a declaration of the relative water rights of the parties. The Court said:

"* * * The company did not, it is true, submit its proof for adjudication of the reservoir right within the time prescribed by Section 71–243, W.C.S.1945 [basically the same as § 41–206, W.S.1957, Cum. Supp., set out in footnote 6, this opinion]. But there was no law to that effect until enactment of Chapter 119 of the Session Laws of 1917 [see footnote 5 of this opinion]. And Section 71–243 applies an entirely different equity in cases of default than counsel for the plaintiff want us to apply in the case at bar. Notice of default must first be given, before any forfeiture can be invoked and no notice of default has been given, so far as the record shows. We find no prejudicial error in the record, and the judgments herein must accordingly be *affirmed*." [10]

█ We will do the same. Forfeitures are not favored and must be promptly asserted or they are waived. *Sturgeon v. Brooks*, 1955, 73 Wyo. 436, 281 P.2d 675.

Affirmed.

---

**10.** The Court had previously referred to the bringing of the action over a half century after granting of the permit. The Court declared it would indulge every reasonable presumption in favor of the appropriator, adding:

"* * * We think plaintiff is too late. Its demand is so extraordinary, if not shocking, that no court of equity, we think, would give it its sanction."