CHARLEY MAYOR,

*Appellant, Appellant,*

vs.

BOARD OF COUNTY COMMISSIONERS AND
JOHNSON COUNTY WOOL GROWERS ASSOCI-
ATION,

*Appellees, Respondents.*

(No. 2386; April 20th, 1948; 192 Pac. 2d. 403)

For appellant the cause was submitted on the brief and oral argument of Mr. Jack Wolfe of Sheridan, Wyoming.

For appellees the cause was submitted on the brief and oral argument of Mr. William C. Holland of Buffalo, Wyoming.

## OPINION

RINER, Chief Justice.

The district court of Johnson County dismissed an appeal brought to it by Charley Mayor wherein he questioned the propriety of a decision of the Board of Land Commissioners rendered by said Board on the fifth day of September, 1946 in a controversy involving conflicting applications for a lease on certain state land described as Section 16, Township 43 N., Range 80 West of the Sixth P. M. in Johnson County Wyoming, by Mayor as one applicant and the Johnson County Wool Growers Association as the other applicant. The record is here by direct appeal, brought by Mayor as appellant against the Board and Association mentioned above as respondents. For convenience and brevity Charley Mayor will usually be designated as the "appellant" or by his surname, the Board of Land Commissioners as the "Board" and the Johnson County Wool Growers Association as the "Association", the two last named

parties being at times collectively referred to as the "respondents". The facts to be considered in this matter are not seriously, if at all, in dispute and are substantially these:

The Esponda Company on February 1, 1936 obtained a lease for grazing and agricultural purposes from the Board aforesaid upon the lands heretofore described for the term of five years, which period was thereafter subsequently renewed for another following similar period of time so that the instrument with which appellant is connected expired February 1, 1946. That connection arose through an assignment of said lease by the Esponda Company to appellant under date of October 22, 1945, he having theretofore purchased the properties of that corporation, part of which adjoin the land in question on the easterly side thereof. He owns, as he states in his application, about two hundred ninety-four head of live stock consisting of horses, cattle and hogs, the cattle being beef animals and two hundred in number. It appears that the land aforesaid has been entirely in use as grazing land only. Mayor made application for a renewal lease on this land on January 18, 1946 as the holder of the expiring lease, being such holder through procuring the assignment thereof mentioned above. He is a bona fide citizen of the State of Wyoming and duly qualified to hold the applied for lease.

The Association aforesaid also made application for this said land under date of January 28, 1946. It would appear to derive its existence and powers under and from the provisions of Section 44-1017 W. C. S., 1945 which reads:

"In all cases when the citizens of any county, or of two counties jointly, shall, or may have organized a county stock and agricultural society, not exceeding one in each county, by the adoption of a constitution and the

choice of officers, they shall have all the powers of a corporation and body politic, and may sue and be sued, plead and be impleaded, prosecute and defend to final judgment and execution in any court of law or equity, and may purchase and hold any real or personal estate which shall be necessary to best promote the objects of said association, and which estate shall be exclusively devoted to such objects. Said societies shall also have power to sell and convey any and all such real estate, said conveyance being executed by the president and secretary of such society. All such land and property shall be exempt and free from taxation, while used as aforesaid by such societies."

Through its application and statements made in connection therewith, it develops that the Association has a membership of 97 persons who are engaged in the sheep industry owning some 144,000 sheep and represent the major portion of the sheep industry in Johnson County. The Association desired a lease on the land aforesaid for a stock rest and water gap having used the section for these purposes under arrangements with previous lease holders for over ten years. The attention of the land officials was called to the asserted fact that this section of land has been of particular value for such uses to the sheep owners in said county and it was very important that this available use be continued; that the Association's application was made in order to assure that use in the future, the Esponda Company with which it heretofore dealt having disposed of its (the Esponda Company's) properties; that the land is more valuable to the public generally for these uses than a use by any individual could be; that the land which is a so-called "school section" is traversed by a state highway extending from Kaycee to Sussex which road about divides the land in half into a northerly portion and a southerly portion; that at the time this road was constructed some three years ago, the State Highway Department built a woven wire fence on each side of the highway and although this

fence somewhat reduced access to the northerly half of the section in question, it was still possible to use both sides of the roadway for a stock rest; that a large irrigation canal known as the Sahara Ditch runs through the north half of said section just a short distance from the highway furnishing a source of water supply from early spring until late in the summer; that in the south half of the section Powder River is located and is a source of water at all seasons; that in order to obtain the fullest use of this river water the Association has constructed a fence along the north bank of the stream in such a manner that cattle are restrained from getting past said fence from the south but the wire thereof is so placed as to allow the sheep to cross under and through the fence; that this fencing and a bridge over said ditch are owned by the Association; that practically all the sheep from the southeast part of Johnson County pass along this route on their way to the summer range in the Big Horn Mountains; that cattle use this route to some extent; that the nearest water on the east of this section is on the stock driveway on the northeast quarter of section 9 and the northwest quarter of section 10, Township 43 N., Range 79 W. of the Sixth P. M. over six miles distant and there is no water to the west of the section until the southeast quarter of section 9, Township 43 N., Range 81 W. of the Sixth P. M. is reached, distant over seven miles, where there is a water gap but no ground for a stock rest; that without the section in question being available for these purposes, owners of sheep would find it practically impossible to trail from twelve to thirteen miles along the highway in a fenced lane; that this land in question has been used by the public as a water gap and stock rest for over forty years; that to insure its future use in this way to the public and stock men, it would be definitely better to have a lease to the Association directly from the state. It seems that the

Association has in past years paid to the holder of the state lease an amount equal to the annual state rental charge for this leased land, this amount being sixty-four dollars a year.

From the foregoing it is apparent that the applicant Mayor desires the land in question for grazing purposes for his own live stock and the Association seeks it for use as a stock rest and water gap for sheep and cattle generally, both the Association and Mayor having actual and necessary use for the section of land in controversy and each offering as rental the sum of sixty-four dollars per year or ten cents per acre.

Under date of March 13, 1946 the Commissioner of Public Lands reached the conclusion that it would "inure to the greatest benefit to the State of Wyoming and its people" to reject the application of Mayor and allow the application of the Association for the lease the latter desired. The Commissioner's action was in accord with this conclusion. Each applicant was duly notified of this ruling and allowed as the law directs, thirty days for an appeal to the Board of Land Commissioners. April 8, 1946 Mayor appealed to said Board from the Commissioner's ruling, the appeal papers being filed on that date with the Commissioner of Public Lands. April 22, 1946 the Association filed an "Answer to Appeal by Charley Mayor". After several postponements, the matter was taken up, considered and the appeal decided at the meeting of the Board held September 5, 1946.

Prior to that meeting and under date of September 3, 1946, counsel for the Association wrote two letters, one to the Commissioner of Public Lands and one to the Governor of this state who is ex officio chairman of the Board. The letter to the Commissioner suggested that the Association would "accept the use of the land south

of the highway" or that a "lease could be granted to Mayor with reservation that the land south of the highway could be used by the public for a water gap and stock rest" or that "it might be to the public interest for the state to decline to lease" the portion of the section last mentioned "and leave it open for a water gap and stock rest". The letter to the Governor seems to deal with the last suggestion and urged that it be adopted. The Commissioner's decision, the appeal of Mayor and the Association's answer thereto, plats showing the status of the land supplied by both applicants and these letters from the Association's counsel were, on the date of the meeting of the Board (September 5, 1946) all presented to that body and were apparently available to all interested parties present on that occasion.

The decision of the Board at said meeting was that "The application of Charley Mayor was disallowed as to the land south of the highway as it is the desire of the Board to leave the portion south of the road unleased. The application of Charley Mayor for the land north of the highway was allowed.

"Johnson County Wool Growers application was disallowed in its entirety." There appears to have been no dissent within the Board membership in reaching this result. It was from this ruling of the Board that Mayor duly perfected his appeal to the district court of Johnson County. It was in that court stipulated under date of April 1, 1947 by the respective counsel for Mayor and for the Association that this matter should be "submitted to the above entitled court for trial de novo on the record herein, as certified to by the Commissioner of Public Lands, and upon written briefs."

Thereafter that court having considered the written arguments of the parties reached the conclusion that

the appeal of Mayor should be dismissed and a judgment to that effect was entered May 19, 1947. From this judgment the proceeding at bar was prosecuted.

The law, both fundamental and statutory which requires examination in order to properly dispose of this appeal is to be found in the following:

The Act of Admission of Wyoming as a state into the National Union contains these two paragraphs:

"§ 4.  School lands granted.—Sections numbered 16 and 36 in every township of said proposed state, and, where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one-quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said state for the support of common schools, such indemnity lands to be selected within said state in such manner as the legislature may provide, with the approval of the secretary of the interior; Provided, That section 6 of the act of Congress of August 9, 1888, entitled 'An act to authorize the leasing of the school and university lands in the Territory of Wyoming, and for other purposes,' shall apply to the school and university indemnity lands of the said state of Wyoming so far as applicable."

"§ 5.  Sale of school lands—Leases.—All lands herein granted for educational purposes *shall be disposed of only at public sale, the proceeds to constitute a permanent school fund,* the interest of which only shall be expended in the support of said schools.  But said lands *may,* under such regulations as the legislature shall prescribe, be leased for mineral, grazing, agricultural, or other purposes, provided that the term of agricultural and grazing leases shall not exceed 10 years; mineral leases including leases for exploration for oil and gas and the extraction thereof for a term not longer than ten years; and such land shall not be subject to preemption, homestead entry, or any other entry under the land laws of the United States, whether surveyed

or unsurveyed, but shall be reserved for school purposes only." (Italics supplied).

Sections 1, 2 and 3 of Article 18 of Wyoming's Constitution provide:

"§ 1.  Land grants accepted—Price limit.—The state of Wyoming hereby agrees to accept the grants of lands heretofore made, or that may hereafter be made by the United States to the state, for educational purposes, for public buildings and institutions and for other objects, and donations of money *with the conditions and limitations that may be imposed by the act or acts of congress, making such grants or donations. Such lands shall be disposed of only at public auction to the highest responsible bidder,* after having been duly appraised by the land commissioners, at not less than three-fourths the appraised value thereof, and for not less than $10 per acre; provided, that in the case of actual and bona fide settlement and improvement thereon at the time of the adoption of this constitution, such actual settler shall have the preference right to purchase the land whereon he may have settled, not exceeding 160 acres at a sum not less than the appraised value thereof, and in making such appraisement the value of improvement shall not be taken into consideration. If at, any time hereafter, the United States shall grant any arid lands in the state to the state, on the condition that the state reclaim and dispose of them to actual settlers, the legislature shall be authorized to accept such arid lands on such condition, or other conditions, if the same are practicable and reasonable."

"§ 2.  Application of proceeds.—The proceeds from the sale and rental of all lands and other property donated, granted or received, or that may hereafter be donated, granted or received, from the United States or any other source, shall be inviolably appropriated and applied to the specific purposes specified in the original grant or gifts."

"§ 3.  Board of land commissioners.—The governor, secretary of state, state treasurer, state auditor and superintendent of public instruction shall constitute a board of land commissioners, which under direction of the legislature as limited by this constitution, *shall*

*have direction, control, leasing and disposal of lands
of the state granted, or which may be hereafter granted
for the support and benefit of public schools,* subject to
the further limitations that the sale of all lands shall
be at public auction, after such delay (not less than the
time fixed by congress) in portions at proper intervals
of time, and at such minimum prices (not less than the
minimum fixed by congress) as to realize the largest
possible proceeds. And said board, subject to the limit-
ations of this constitution and under such regulations
as may be provided by law shall have the direction, con-
trol, disposition and care of all lands that have been
heretofore or may hereafter be granted to the state."
We have italicized the provisions of these foregoing
sections of the Constitution which we deem of special
significance herein. Sections 24-102 and 24-106 of 2
W. C. S. 1945 reaffirm in our statutes the declarations
contained in the constitutional provisions set forth
above.

"§ 24-113. Preference in granting leases—Assignment
or subleasing—Lands taken for war purposes.—All
state lands leased by the state board of land commis-
sioners for grazing purposes shall be leased in such
manner and to such parties as *shall inure to the great-
est benefit to the state. Except as herein provided,* pre-
ference shall in all cases be given to applicants who are
bona fide resident citizens of the state qualified under
the provisions of Section 91-109 (§ 24-109), as amend-
ed, and to firms, associations or corporations author-
ized to transact business in the state, having actual and
necessary use for the land and who are the owners,
lessees or lawful occupants of adjoining lands, who of-
fer to pay an annual rental for the use of the land for
a period of ten (10) years, within the minimum and
maximum limits of appraised rental value as provided
in Section 91-108 (§ 24-108) ; provided, that an appli-
cant who is the holder of an expiring lease, and has paid
the rental when due, and has not violated the provisions
of the lease, and is qualified under the provisions of
Section 91-109 (§ 24-109), shall have a preferred right
to renew such lease.

"If the lessee of state lands shall assign or sub-lease all

or any part of the lease area, said lease shall be subject to cancellation unless such assignment or sub-lease is approved by the board of land commissioners; however, no such approval shall be arbitrarily or unreasonably withheld and *all action upon each application therefor, shall be such as will inure to the greatest benefit to the state;* provided, that in no event shall said lands be subleased for a cash consideration in excess of the established rental rate unless one-half of such excess rental be paid to the state.

"Provided further, that whenever any state owned lands have been or may hereafter be condemned or acquired by the United States for war purposes and whenever said lands may hereafter be recoveyed to the state of Wyoming by the said United States or any department thereof, then in such event the state board of land commissioners shall give preference to the lessee holding said lands at the time of the taking of said lands by the said United States or any department thereof.

"Provided further, that this Act (§§ 24-101—24-113—24-115—24-124) shall not be applicable to the leasing of state mineral lands under the provisions of Article 8, Chapter 91, Wyoming Revised Statutes, 1931 (§§ 24-701—24-708).

"Provided further, that the state board of land commissioners shall in the leasing of state agricultural lands lease all such lands in such manner and to such parties as *shall inure to the greatest benefit to the state;* provided, that an applicant who is the holder of an expiring lease, and has paid the rental when due, and has not violated the provisions of the lease, and is qualified under the provisions of Section 91-109 (§ 24-109), shall have a preferred right to renew such lease. (Laws 1929, ch. 108, § 13; 1931, ch. 45, § 1; R. S. 1931, § 91-113; Laws 1943, ch. 60, § 1; 1945, ch. 34, § 1.)" (Italics supplied).

The contention advanced by appellant under the respective provisions of operative law in this state recited above is, as we understand it, that when an applicant for the lease of state school lands who is in all respects

qualified to hold it as a renewal lessee, presents his application for such a lease to the Board, that body *must* grant the lease and may not under any circumstances decline to issue it to him. He insists that it is "the solemn duty of the Board of Land Commissioners either to sell or lease all school lands for the support of common schools". The pronouncements made in past years for this court as it has had occasion to consider some of these enactments throw considerable light on the problem posed.

In Cooper vs. McCormick, 10 Wyo. 379, 69 Pac. 301 it was indicated that:

"In ordinary cases the board is vested with a wide discretion in the matter of renewing leases. (R. S., Sec. 812.) That discretion is doubtless to be exercised reaonably, rather than arbitrarily, and with a due regard to the rights of the lessee, as well as the interest of the State, taking into consideration all the statutory regulations relating to the leasing of state lands. It is probable, however, that the discretion is such that, except in case of fraud or grave abuse resulting in manifest wrong and injustice, the courts would not feel warranted in interfering with its exercise."

This view was reiterated in Baker v. Brown, 12 Wyo. 198, 74 Pac. 94 and it was there said that the discretion of the Board "ought not to be interfered with by the courts except in case of fraud or grave abuse resulting in manifest wrong and injustice". The still later case of Miller vs. Hurley, 37 Wyo. 344, 262 Pac. 238 is to the same effect. There the contention presented to the court was:

"that an appeal from the land board and a trial *de novo* in the District Court, whatever discretion the land board may have had in the proceedings before that board is set aside, completley wiped out, and that the only discretion left in the case is the discretion the District Court may possess in the ordinary trial of a civil

action, and, further, that the judgment of that court must grant a lease either to appellant or appellee."

After remarking that the contention thus advanced was untenable it was definitely declared that the Board's discretion:

"should be controlling except in the case of an illegal exercise thereof or in case of fraud or grave abuse of such discretion."

In Mercer v. Thorley, 48 Wyo. 141, 43 Pac. 2d 692, this court had for review the right of renewal of a state school lease as it was controlled by Section 91-113 W. R. S. 1931, not materially different in its effect on the point here in question from Section 24-113 supra, remarked in reference to that statute:

"On the face of it, in any event, the right of renewal therein given is not absolute but conditional. It is given only 'over all others'. The State is not compelled to lease the land, at least if it acts in good faith. It may sell it at any time. Section 91-501. And it could, no doubt, without a renewal if it desires to use the land itself. A number of other conditions are named in the statute."

Relative to the right to sell school lands in State ex rel. Cross vs. Board of Land Commissioners, 50 Wyo. 181, 58 Pac. 2d 423, on petition for rehearing, 50 Wyo. 205, 206, 62 Pac. 2d 516, it was said:

"Relator has at all times conceded, and correctly, we think, that the Board aforesaid may sell or decline to sell the lands in its care, as it deems to the best advantage for the State."

In Kerrigan vs. Miller, Governor, et al., 53 Wyo. 441, 84 Pac. 2d 724, it was pointed out that "the preferential right granted by statute is not, and could not be, absolute but is qualified" and also that "the legislature has made the 'greatest benefit' a factor distinct from that of the 'greatest revenue'." This last statement becomes

significant when it is noted that the words "greatest revenue" were struck out of the statute (Section 91-113 W. R. S. 1931) under consideration in the Kerrigan case by the amendment of the statute adopted by our state legislature in Ch. 60, Laws of Wyoming, 1943.

The emphasis laid by the legislature upon the disposal of grazing school lands of the state by leasing, approval of sub-leasing or assignment and also the disposal of the agricultural school lands of the state by leasing as concerns the phrase "inure to the greatest benefit of the state" becomes decidedly heavy when it is noted that these words are repeated no less than three times in Section 24-113 W. C. S. 1945 quoted above, which section appears to be a re-script of the final amending statute, Ch. 34 Laws of Wyoming, 1945. It would seem that the legislature was endeavoring to enlarge the discretion of the Board in its disposal of the school lands under said Section 24-113 if possible. We find it said in National Surety Company vs. Jarrett, 95 W. Va. 420, 121 S. E. 291 that:

"'Benefit' as used in the law of contracts is not limited to pecuniary gain, Page, Contracts, Sec. 774, nor do we think to any particular kind of advantage; and 'ordinarily when we speak of "benefits" to us, we mean and refer to what is advantageous to us, whatever promotes our prosperity, or enhances the value of our property, or property rights, or rights as citizens, as contradistinguished from what is injurious.' A. Booth & Co. v. Weigand, 30 Utah, 135, 83 Pac. 734, 10 L. R. A. (N. S.) 693."

In this connection it may be appropriately observed that in the Kerrigan case aforesaid it was further suggested that the words "greatest benefit to the state" refer "problably to the general benefit to the state and the people thereof".

In Banzhaf vs. The Swan Co., 60 Wyo. 201, 148 Pac.

2d 225 where the court again had occasion to consider Section 91-113 W. R. S. 1931, it was held that the Board possessed a wide discretion in the matter of leasing state school lands and this discretion was conclusive on appeal except in case of illegal exercise thereof, fraud, or grave abuse of such discretion.

The conclusion thus announced in the Banzhaf case would seem to be rather similar to that declared in the decision rendered in Pike vs. State Board of Land Commissioners, 19 Idaho 268, 113 Pac. 447. In that case it appeared that the Constitution of Idaho vested the "control, management and disposition of state lands in the State Board of Land Commissioners". Speaking of their powers, the court remarked that:

"They are, as it were, the trustees or business managers for the state in handling these lands, and on matters of policy, expediency and the business interest of the state, they are the sole and exclusive judges so long as they do not run counter to the provisions of the constitution or statute."

The Enabling Act of the State of Oklahoma in Section 9 thereof provided:

"That said sections sixteen and thirty-six and lands taken in lieu thereof, herein granted for the support of the common schools, if sold, may be appraised and sold at public sale in one hundred and sixty acre tracts or less, under such rules and regulations as the Legislature of the said state may prescribe, preference right to purchase at the highest bid being given to the lessee at the time of such sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of such school. But said lands may, under such regulations as the Legislature may prescribe, be leased for periods not to exceed ten years;"

In Magnolia Petroleum Co. vs. Price, 86 Okla. 105, 206 Pac. 1033 the court discussing certain provisions of the Oklahoma constitution said:

"Under section 1, art. 11, of the Constitution, these lands were accepted by the state under and with the conditions imposed by sections 7, 8, 9, and 10 of the Enabling Act. This completed the transfer of the title from the government to the state. After the adoption of the Constitution, the state could dispose of said lands as it saw fit, except that it could not violate the conditions it had accepted, and no condition was contained in the Enabling Act which required the state to sell any of said lands unless it saw fit to do so.

"Section 4, art. 11, of the Constitution, provides that all lands accepted under such grant and the conditions thereof 'may' be sold by the state under rules and regulations prescribed by the Legislature and in conformity with the regulations of the Enabling Act."

Concerning the effect of the quoted sections from the Enabling Act and the Oklahoma constitution, the court then stated that:

"This completes the contract between the state and the government, the grant by the government and the acceptance by the state, which supersede all previous agreements and reservations. The state now has complete control of such lands to lease or not to lease if it so chooses; to sell or not to sell if it so chooses. Should it sell any of them or lease any of them, such sale or lease must not violate the conditions of the grant. Hence the state, by section 32, art. 6, of the Constitution, created the Commissioner of the Land Office, composed of the Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and President of the Board of Agriculture, and expressly gave to such Commissioners complete jurisdiction and charge of the sale, rental, disposal, and management of the lands in question, and the funds derived therefrom, under rules and regulations to be prescribed by the Legislature."

The case last above reviewed was on error affirmed by the United States Supreme Court, Price vs. Magnolia Petroleum Co., 267 U. S. 415, 45 S. Ct. 312, 69 L. Ed. 689. Speaking of the right to sell these school lands

in the course of the opinion in that case filed, the court declared that:

"The State was not bound to sell them at any time, or at all, but might retain them as long as it deemed proper, and make meanwhile such leases as it desired not in conflict with the provisions of the Act."

The ruling in the Magnolia case supra would seem to have the support of later decisions in the same state jurisdiction. See Anderson -Pritchard Oil Corp. vs. McBride, 188 Okla. 384, 109 Pac. 2d 221, 223; Knapp vs. State ex rel. Commissioners of Land Office, 196 Okla. 513, 166 Pac. 2d 86.

In the matter at bar the cases to which reference has hereinabove been made make it reasonably clear that the discretion of the Board in both the leasing and the sale of school lands of this state has been given, as we have many times before held, a very broad scope subject only to the limitation that review by the courts may be had of its action in the event of the Board's transgression of provisions of positive law, fraud or having committed a grave abuse of that discretion. Whether the Board has exceeded this limitation must be determined from the varying circumstances of individual cases.

Must it be deduced from the mere fact that the legislature has prescribed certain rules to be followed in leasing and sale of its school land, i. e., procedure to be adopted in the event the Board in its discretion decides to lease or sell such lands, that the Board is bound in all cases, to lease or sell when an applicant demands that that be done? It is difficult to perceive that this should be so under the law as we have hereinabove set it forth. Especially is this true in the matter of leasing such lands when we find the Act of Admission stating merely that the state school land *"may"* be leased. This directory provision of the Congressional Act of Ad-

mission was duly accepted by the people of this state when they adopted our constitution. We observe as said in Bechtel vs. Board of Supervisors of Winnebago County, 217 Ia. 251, 251 N. W. 633 that:

"As a general rule, the word 'may' when used in a statute is permissive only and operates to confer discretion. The great weight of American Authority is that the word 'may' when used in a statute is permissive only, and operates to confer discretion, unless the contrary is clearly indicated by the context of the statute." (Citing numerous authorities).

So in Brennen vs. Board of Election Commissioners, 310 Mass. 784, 39 N. E. 2d 636, 637 it is very well said: "'may' is not an apt word to express a positive mandate. It is a word of permission and not of command. It should be construed, if possible, in accordance with its true signification." (Citing extended list of cases from that jurisdiction.)

Our attention has not been directed to any mandatory provision of law requiring either sale or lease of school lands of the state.

If an applicant can always force a lease or a sale of school lands over the considered and legal discretion to the contrary undertaken to be be exercised by the Board, what becomes of their discretion? Obviously there would be no such thing. So evidently thought the Supreme Court of Oklahoma and so we now think, as the utterances of the court disclose we have in the past. The provisions of law in Section 24-113 W. C. S. 1945 become binding upon the Board's action if and when it decides to lease school lands. Until that time arrives, it may lease or not as it sees fit. Instances may readily be suggested where it would be a far greater advantage to both the people of the state and the schools thereof that the lands be withheld from lease. There are many other advantages and benefits to be taken into consideration in such matters other than obtaining a

specified amount of revenue. The Board evidently thought that the situation at bar was such an one.

We can not see that the Board's action now under review, transgressed the statutory or constitutional law of this state or constitutes a grave abuse of the broad discretion assigned to it. There is no pretense that there was any fraud involved. The judgment of the district court of Johnson County will be accordingly affirmed.

*Affirmed.*

KIMBALL, J., and BLUME, J., concur.

## ON PETITION FOR REHEARING
(July 13th, 1948; 195 Pac. (2d) 752)

On petition for rehearing.
Rehearing denied.

In support of the petition there was a brief by Mr. Jack Wolfe of Sheridan, Wyoming.

## OPINION ON REHEARING

RINER, Chief Justice.

A petition for rehearing in this case has been filed by

counsel for appellant. It present copious quotations from his original brief-work which were given full consideration by this court before the opinion affirming the action of the district court was filed herein. It re-argues points which have been decided adversely to counsel's contentions and also discusses new points which were never before presented to the district court or to this court.

Some twenty-eight years ago this court declared in Watts vs. Lawrence, 26 Wyo. 367, 378, 185 P. 719, 188 P. 34 that:

"We think the correct rule on applications for rehearing is well stated, and supported by the authorities, in 18 Enc. P. & P. 36, as follows: 'Where all the facts presented have in fact been duly considered by the court, and where the application presents no new facts, but simply reiterates the arguments made on the hearing, and is in effect an appeal to the court to review its decision on points and authorities already determined, a rehearing will be refused.'"

We still think that statement supplies a "correct rule on applications for rehearing."

Counsel has overlooked also another rule which declares that "points raised for the first time in a petition for rehearing will ordinarily not be considered." First National Bank of Green River vs. Ennis, 45 Wyo. 165, 15 P. 2d 1111 and cases cited. See also 3 Am. Juris. 350, 351, Section 806; Bankers Life Company vs. Nelson, 56 Wyo. 513, 111 Pac. 2d 136.

Counsel insists that the State Board of Land Commissioners decided to lease the lands in question, i. e., the land south of the highway in Section 16, Township 43 N., Range 80 W. in Johnson County Wyoming. We think the record shows exactly to the contrary of this contention. The main difficulty in the instant case appears to be that the district court and this court enter-

tain different views than counsel for appellant not only regarding the facts disclosed by the record before us but also of the law which should be controlling. This application for a rehearing has made that perfectly clear even if it was in the least degree doubtful before. After a careful re-examination of the record and the law as previously announced in this case, viewed in the light of counsel's brief on rehearing, we are, nevertheless, obliged to say that we must adhere to the views heretofore expressed and rule that the petition for a rehearing should be denied.

*Rehearing Denied.*

KIMBALL, J., and BLUME, J., concur.