Emilio Dávila Díaz, Plaintiff, Appellee and Appellant, *v.* Puerto Rico Land Authority, Defendant, Appellant, and Appellee.

No. 11329. Argued November 1, 1955.—Decided December 21, 1955.

*Antonio Riera, Aureliano Rivas Rosario, Ramón Gandía Biscombe, Alberto Ferrer* and *Félix Bello* for appellant-appellee. *Ángel Manuel Ciordia* for appellee-appellant.

MR. JUSTICE MARRERO delivered the opinion of the Court.

This is a civil action brought by Emilio Dávila Díaz to recover damages from the Land Authority of Puerto Rico.[1] The complaint alleges, essentially, that the Authority drove

---

[1] We shall hereafter refer to the Land Authority of Puerto Rico merely as the Authority.

out 28 head of cattle belonging to him which were grazing on the leased farm, notwithstanding his being a lessee of the Authority. The Authority answered specifically and, after a pre-trial conference, the case went to trial. The parties presented oral and documentary evidence and the lower court rendered judgment for plaintiff based on a brief opinion which reads verbatim as follows:

"This case is of slight importance. However, from the volume of paper used by the parties in their manifold allegations, one would think that the litigation involves the revendication of the Panama Canal or the possession of the atomic bomb. The whole litigation boils down to plaintiff's request that the defendant be ordered to pay damages for driving out of a small tract of land belonging to the defendant some head of cattle which plaintiff pastured thereon. It is alleged that plaintiff paid a certain amount of money to the defendant for the use of that small tract of land.

"Based on the evidence, the court finds that the defendant acquired several farms in the town of Vega Alta, and among them was a small tract of land which was leased by plaintiff from the former owner. Plaintiff used that land for the grazing of cattle. The defendant notified plaintiff that it did not wish him to continue using the tract in question. By virtue of an independent proceeding not related with the present action, the parties reached an agreement whereby the defendant sold to plaintiff certain land on which some houses were located, and plaintiff agreed to surrender the remainder of the land to the defendant. However, he continued to use the small tract for his cattle. Since the defendant had sold the land to a third person, it proceeded to drive plaintiff's cattle out of the premises. Notwithstanding the fact that the lease contract between the parties had expired, plaintiff, for some time, continued using the land and paying for its use to the defendant. The court believes that the defendant should not have driven out plaintiff's cattle from the premises without resorting to the due process of law. The defendant alleges that it did so because that was the agreement between the parties and because the lease contract had terminated. The court is of the opinion that the defendant's action was rather hasty, although without bad faith. In view of this situation, plaintiff contends that the

defendant has caused substantial damages to him. The court believes, however, that those damages were unimportant and that, in terms of money, they are worth a small teacupful.

"It is ordered that the defendant pay to plaintiff the sum of $175 for the damages, plus the costs, excluding the attorney's fees."

Both parties appealed from this judgment. We shall discuss first the assignments made by the defendant. It alleges that the lower court erred (1) in not granting defendant's motion for summary judgment in its favor on the basis of plaintiff's admissions; and (2) in not giving due legal effect to the evidence offered and admitted. These errors have not been committed.

As already stated, the Authority answered the complaint specifically. At the pretrial conference plaintiff admitted 14 out of the 16 paragraphs of the answer, but denied Nos. 8 and 16. In numerous cases we have held that a motion for summary judgment lies only when there is no genuine controversy of facts. *Despiáu* v. *Pérez*, 76 P.R.R. 117; *Sánchez* v. *De Choudens*, 76 P.R.R. 1; *Santiago* v. *Sup. Court*, 75 P.R.R. 213; *Escalera* v. *Armenteros*, 74 P.R.R. 10; *Hernández* v. *Caraballo*, 72 P.R.R. 628; *Commercial Casualty Ins.* v. *District Court*, 71 P.R.R. 841; *Heirs of Guerra* v. *Sánchez*, 71 P.R.R. 756; *Fernández* v. *District Court*, 71 P.R.R. 149; *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388; *Hettinger & Co.* v. *District Court*, 69 P.R.R. 123; *Ramos* v. *People*, 67 P.R.R. 600. Since plaintiff did not admit the allegations in those two paragraphs of the answer and there being, therefore, a controversy on certain allegations of the complaint, there unquestionably existed before the lower court a genuine controversy of facts which called for decision. This being so, the lower court did not err in dismissing the motion.

There is no question that the weighing of the evidence is one thing and the legal effect to be given thereto is another. *Mercedes Bus Line* v. *District Court*, 70 P.R.R.

656; *Rodríguez* v. *Pagán*, 67 P.R.R. 321, 324. The evidence in this case was conflicting, but the lower court decided the conflict and we find that it committed no error in so ruling. Having believed plaintiff's evidence, the judgment in his favor was in order.

■ The first four of the six errors assigned by plaintiff charge that the trial court erred (1) "in concluding that the lease contract between the parties had expired, and that plaintiff, for some time, continued using the land and paying for its use to the defendant"; (2) "in concluding that the parties had reached an agreement by virtue of an independent proceeding not related with the present action whereby plaintiff agreed to surrender the remainder of the land to the defendant"; (3) "in concluding that the Land Authority acted without bad faith in driving out Mr. Dávila Díaz' cattle from the premises"; and (4) "in concluding that the damages caused to plaintiff by the defendant were unimportant and that, in terms of money, they were worth a small teacupful." These errors are directed to the reasoning used by the lower court in its opinion on which it based its conclusion. In this connection, it will suffice to say that in numerous cases this Court has held that the appeal is taken from the judgment and not from the reasons or grounds of the opinion. *Lluberas* v. *Mario Mercado e Hijos*, 75 P.R.R. 7; *Silva* v. *John Doe*, 75 P.R.R. 198; *Hernández* v. *Caraballo*, 74 P.R.R. 27; *Armstrong* v. *Comm'r of the Interior*, 74 P.R.R. 160.

■ In the fifth and sixth assignments plaintiff alleges that the lower court erred (5) "in awarding to plaintiff the sum of $175 for all damages"; and (6) "in not granting punitive damages."

It appears from the record that plaintiff, as lessee of the previous owner, held possession of two small tracts of land which were integral parts of two larger farms which the lessor, Finlay Brothers & Waymouth Trading Co., sold to the

Authority by public deed executed on May 6, 1946; that plaintiff held those small premises since 1942 by virtue of an extrajudicial lease contract, for an annual rental of $48, payable in advance; that the original lease term was one year, which was thereafter renewed verbally for a term of three years which would expire on June 30, 1946; that the Authority, having acquired the property on May 6, 1946, on the 12th day of the following August it wrote a letter to plaintiff, informing him of the purchase of the premises held by him and requesting him to surrender the same within a period of 10 days; that this notwithstanding, the Authority continued to receive from plaintiff the sum of $48 annually;[2] that plaintiff constructed certain buildings on one of the two premises in his possession, i. e., that of 11.50 cuerdas, which according to a subsequent survey appeared to have only 10.3229 cuerdas, and that for this reason plaintiff desired to purchase it, which he could not accomplish because the Planning Board of Puerto Rico refused authorization "because the property the object of the sale is located at a distance of a little over one kilometer from the urban zone of Vega Alta and might be useful in the future development of industrial projects"; that thereafter the Board authorized the sale to plaintiff of a tract of 1.46 cuerdas of the same property where the buildings were erected, as a result of which plaintiff remained, nonetheless, in possession of the remaining 10.3229 cuerdas; that, prior to the sale, the Authority filed a petition for declaratory judgment against plaintiff to determine the character of the possession held by him, but when the land was sold to plaintiff the petition was denied for lack of prosecution; and that, while plaintiff was in possession of the remainder of the property, an Authority employee, in the presence of a son of the former, drove out all the cattle which plaintiff had on that tract. It

---

[2] Again we need not determine whether plaintiff held the possession as lessee or usuary. *Cf. Harris* v. *Keehn,* 184 Pac. 527.

also appears from the record that plaintiff paid to the Authority for the use of the two small properties the following amounts: $96 on June 17, 1947; $48 on July 20, 1948; $48 on September 14, 1949; $48 on July 19, 1950, and $48 on June 30, 1951.[3] That was, essentially, the situation before the court at the time of rendering its decision.

If plaintiff held the legal possession of the premises either as lessee or as usuary,[4] the Authority had no right to take the law in its own hands. In so doing, that is, in driving out the cattle from the property held by plaintiff, it incurred liability.

▮▮▮▮▮▮ In the prayer of the complaint plaintiff urges that the defendant be ordered to pay the sum of $53,053.66, plus the costs and $5,000 for attorney's fees. The lower court, as has been seen, awarded him only $175 and the costs. It is contended by plaintiff that according to the allegations of the complaint and the evidence heard at the trial, the sum claimed is for the loss suffered in the sale of cattle; the fences erected on the farm and the clearing of the land; the lease term which was still unexpired; the amount paid to round up the cattle which went astray when they were driven out of the property; the earnings which he failed to realize, and the good will of the meat market which he operated in Vega Alta. We do not know specifically for which of these items the lower court awarded the sum in question.

---

[3] Since the presumption is that the former owner—the lessor—had received rent up to June 30, 1946, we assume that plaintiff paid to the Authority, as rental or for the use, as the case may be, up to June 30 1952.

The cattle were driven out of the farm on October 9, 1951.

[4] See *Abarca* v. *Bank of Nova Scotia*, 46 P.R.R. 914; *López* v. *District Court*, 67 P.R.R. 163; *Ball* v. *Vilá*, 67 P.R.R. 388; *De la Cruz* v. *Government of the Capital*, 68 P.R.R. 496; *Vidal* v. *District Court*, 71 P.R.R. 544; *Housing Authority* v. *Sagastivelza*, 72 P.R.R. 262; *People* v. *Soc. Agric. Mario Mercado e Hijos*, 72 P.R.R. 740; *Torres* v. *Biaggi*, 72 P.R.R. 813; *Asoc. Cooperativa* v. *Navarro*, 73 P.R.R. 140; *Roselló Hnos.* v. *Figueroa*, 74 P.R.R. 403; and *Vélez* v. *San Miguel*, 68 P.R.R. 534.

Although plaintiff's evidence tended to prove that there were 28 head of cattle on the premises at the time they were driven out, plaintiff himself, whose contention is that they were worth more than $4,500, declared (Tr. Ev. 21) that his employee told him "that he had sold *five cows* to Pedro Rodríguez which netted about $2,100." (Italics ours.) Yet, Pedro Rodríguez declared that he purchased five cows from plaintiff for $500. In the first place, we do not know if both witnesses refer to the same five cows; and in the second place, the evidence does not disclose the amount realized from the sale of the remaining head of cattle. It is not possible, therefore, to determine the loss, if any, sustained in the sale of the cows. Regarding the fences erected by plaintiff and the clearing of the land, he had no right to compensation at all since under the express terms of the original lease contract any improvements made by the lessee on the leased premises were to remain for the benefit of the owner at the termination of the contract. Plaintiff's evidence tended to prove that the sum of $60 was paid for rounding up 12 head of stray cattle. Therefore, the logical inference is that the sum of $60 paid on this account is included in the award of $175 for damages. It may also be inferred that there is included an amount for the earnings which he failed to realize from the sale of meat, had the cattle been slaughtered, as well as for the good will of the business, if the award of compensation on this account had been in order. In an action for damages, the amount of the award to be granted is a matter to be decided within the sound discretion of the trial court. *Graniela* v. *Yolande, Inc.*, 65 P.R.R. 100; *Lloréns* v. *Lozada*, 73 P.R.R. 260. In view of the evidence in this case introduced in the lower court, we believe that it did not abuse its discretion in awarding to plaintiff only the sum of $175 on that account. Nor do we believe that the court erred in not holding that the defendant was obstinate and, hence, in not ordering it to pay the attorney's fees.

 The question raised by the sixth assignment was timely posed in the lower court. We turn to discuss it. Under § 281 of the Code of Civil Procedure—32 L.P.R.A. § 2765—"If a person recovers damages for a forcible or unlawful entry in or upon, or detention of, any building or any cultivated property, judgment *may be* entered for three times the amount at which the actual damages were assessed." (Italics ours.) As has been seen, the Spanish text employs the word *"podrá."* The English text, which is the language in which the statute (§ 735 of the Code of Civil Procedure of California)[5] was originally enacted, employs the word "may." In the decision of a case which called for the interpretation of the scope of § 733 of California, equivalent to § 279 of the Code of Civil Procedure of Puerto Rico, in which the word *may* is also used, the Court of Appeals of the State of California stated as follows in *Swall* v. *Anderson*, 140 P. 2d 196, 200:

"But, assuming that the code sections should be given the liberal construction for which the appellant contends, we are still confronted with the question whether they are mandatory so that the court must award treble damages in every case of deliberate injury to trees. Section 733 of the Code of Civil Procedure appears in Chapter II, which is entitled 'Actions for Nuisance, Waste, and Willful Trespass, in Certain Cases, on Real Property.' Several sections of the chapter clearly make it discretionary with the trial court whether treble damages should be awarded. Section 732, relating to waste, and section 735, relating to forcible entry, were enacted at the same

---

[5] Section 13 of the Civil Code—31 L.P.R.A. § 13—provides:

"That in case of discrepancy between the English and Spanish texts of a statute passed by the Legislative Assembly of Porto Rico, the text in which the same originated in either house, shall prevail in the construction of said statute, except in the following cases: (*a*) If the statute is a translation or adaptation of a statute of the United States or of any State or Territory thereof, the English text shall be given preference over the Spanish. (*b*) If the statute is of Spanish origin, the Spanish text shall be preferred to the English. (*c*) If the matter of preference cannot be decided under the foregoing rules, the Spanish text shall prevail."

time as section 733, and no reason has been advanced calling for a different interpretation . . . The word 'may' in ordinary statutory and judicial acceptance is permissive and not mandatory . . ."

The Supreme Court of the State of Nevada expressed a similar view in *Glock* v. *Elges*, 159 Pac. 629, 631, in construing § 5508 of the Revised Statutes, which is worded in exactly the same terms as § 281 of our Code of Civil Procedure. See also *Mayor* v. *Board of Land Com'rs*, 192 P. 2d 403; *San Francisco, etc.* v. *Leonard*, 119 Pac. 405, 412.[6] Therefore, the lower court committed no error in not awarding treble damages.

Since none of the errors assigned by the parties was committed, the judgment appealed from will be affirmed.

---

[6] In *Tewksbury* v. *O'Connell*, 25 Cal. 262, which involved the interpretation of an Act of 1861 under which the awarding of treble damages was mandatory, the Supreme Court of California reached a different conclusion from that herein.