**Moira Q. SCANLON, Petitioner,**

v.

**Howard M. SCHRINAR, Commissioner of Public Lands, and Amoco Production Company, Respondents.**

**No. 87–145.**

Supreme Court of Wyoming.

Aug. 17, 1988.

Rehearing Denied Sept. 20, 1988.

Thomas E. Cahill, Cheyenne, for petitioner.

Joseph B. Meyer, Atty. Gen., and Clinton D. Beaver, Asst. Atty. Gen., for respondent Howard M. Schrinar, Com'r of Public Lands.

Jack D. Palma, II, Edward W. Harris, and William L. Combs of Holland & Hart, Cheyenne, for respondent Amoco Production Co.

Before THOMAS, URBIGKIT, and MACY, JJ., KAIL, District Judge, and JOFFE, Retired District Judge.

MACY, Justice.

Moira Q. Scanlon petitioned the district court for judicial review of the decision of the Commissioner of Public Lands to termi-

nate her oil and gas lease. The case was then certified to this Court, and we are presented with the following issues by Mrs. Scanlon:

I. WHETHER MRS. SCANLON'S EXCLUSIVE RIGHT TO REMOVE SUBSURFACE RESOURCES IS A PROPERTY RIGHT.

II. WHETHER THE COMMISSIONER OF PUBLIC LANDS MUST ABIDE BY HIS OWN REGULATIONS IN DEALING WITH MRS. SCANLON'S EXCLUSIVE RIGHT TO REMOVE SUBSURFACE RESOURCES.

III. WHETHER A "MESSAGE" ON A FORM SOLICITING A "REPLY" CONSTITUTES A "FINAL DECISION OF AN AGENCY IN A CONTESTED CASE."

It is not necessary to address these issues because there are determinative jurisdictional defects.

We dismiss.

On December 22, 1982, Mrs. Scanlon was the successful applicant in the simultaneous oil and gas lease drawing held for the right to lease Parcel No. 699.[1] As a result, Mrs. Scanlon and the Board of Land Commissioners entered into a lease agreement, Lease No. 83–00040, which provided in applicable part:

Annual rentals on all leases shall be payable in advance for the first year and each year thereafter. No notice of rental due shall be sent to the lessee. If the rental is not paid on or before the date it becomes due, notice of default will be sent to the lessee, and a penalty of $0.50 per acre for late payment will be assessed.

The lessee is not legally obligated to pay either the rental or the penalty, but if the rental and penalty are not paid within thirty (30) days after the notice of default has been received, the lease will terminate automatically by operation of

law. Termination of the lease shall not relieve the lessee of any obligation incurred under the lease other than the obligation to pay rental or penalty. The lessee shall not be entitled to a credit on royalty due for any penalty paid for late payment of rental on an operating lease.[2]

On January 21, 1986, the Commissioner of Public Lands sent the following letter by certified mail, return receipt requested, to Mrs. Scanlon:

Payment of advance rental in the amount of $1280.00 on lease No. 83–00040 was not received in this office prior to the due date of January 2, 1985.

In accordance with a new rule approved by the Board of Land Commissioners and effective September 29, 1981, you may retain this lease in good standing if you wish to pay the rental of $1.00 per acre plus 50¢ per acre penalty for late payment.

If your rental and penalty payment in the amount of $1920.00 is not received in this office within 30 days from receipt of this notice, your lease will be terminated by operation of law.

The post office attempted to deliver this letter on January 25 and 30, 1986, with no success and returned it to the Commissioner of Public Lands on February 10, 1986.

The Commissioner of Public Lands received Mrs. Scanlon's certified check dated January 10, 1987, in the amount of $3,840 for rental payments due on January 2, 1986, and January 2, 1987, plus penalty payments incurred on the lease. On January 15, 1987, that check was returned to Mrs. Scanlon with a notice stating:

We are returning your official bank check No. 177545 dated Jan. 10, 1987 in the amount of $3,840.00 which was sent to this office to pay rental for lease # 83–[0]0040. Please be advised that

---

**1.** Parcel No. 699 is legally described as follows: N½: E½SW¼: SE¼ of Section 16, T. 55 N., R. 81 W., 6th P.M. (560 acres); SE¼SW¼: SW¼SE¼ of Section 17, T. 55 N., R. 81 W., 6th P.M. (80 acres); and all of Section 30, T. 55 N., R. 81 W., 6th P.M. (639.48 acres).

**2.** We note that the default provisions contained in Section 9 of the Rules and Regulations Governing Leasing of Sub–Surface Resources for the State of Wyoming Board of Land Commissioners and Wyoming Farm Loan Board, effective March 1, 1982, are identical to these lease provisions.

this lease was terminated Feb. 21, 1986 for failure to pay rental when due. We are enclosing [a] copy of [the] default letter and [a] copy of [the] envelope in which we tried to deliver [the] letter.[3]

On February 5, 1987, Mrs. Scanlon, through her attorney, resubmitted the check and requested reconsideration of the decision to terminate her lease because she had never received the required pretermination notice. The Attorney General's office, on behalf of the Commissioner of Public Lands, responded on February 12, 1987, stating:

I am responding on behalf of my client, Howard M. Schrinar, to your letter of February 5, 1987, concerning the cancellation of State Lease 83–00040.

It is our position that the lease terminated automatically by operation of law as per the terms of the lease and Section 9 of the Rules and Regulations Governing Leasing of Subsurface Resources. Under these provisions, the lease was not "cancelled" on February 21, 1986, by any action taken by the Board of Land Commissioners or its staff. The lease terminated automatically 30 days after receipt of the notice of rental default. It is our position that a lessee has constructively received a notice on the date the United States Postal Service makes its last attempt to deliver a certified letter.

Because Mrs. Scanlon did not attempt to cure her default in paying rentals until nearly one year after the rental default notice was constructively received, she can hardly claim a right to cure the default. Enclosed is Mrs. Scanlon's check for $3,840.00 which I am returning to you. The lease will not be reinstated.

On February 18, 1987, Mrs. Scanlon's attorney replied to the letter from the Attorney General's office, stating in applicable part:

It is my understanding that your letter of February 12, 1987, on behalf of your client, Public Lands Commissioner, Howard M. Schrinar, constitutes his final decision. Mrs. Scanlon has now exhausted her administrative remedies, and whether or not her lease should be reinstated is now ripe for review in the District Courts of Wyoming.

If I have misstated your understanding, please let me know.

The Attorney General's office did not answer this letter. On March 10, 1987, Mrs. Scanlon filed a petition for review in the district court.

The Commissioner of Public Lands filed a motion to dismiss with a supporting brief, and Mrs. Scanlon replied with her own brief in opposition. On June 5, 1987, a "Joint Motion for Certification to the Supreme Court" was filed by the parties. The district court, after allowing Amoco Production Company to intervene as a defendant/respondent to the action and after Amoco Production Company had consented to the motion for certification to the Supreme Court, certified this case for review by this Court.

Mrs. Scanlon argues that the notice dated January 15, 1987, informed her of the termination of her oil and gas lease but could not be considered as a final decision of an agency which was ripe for judicial review until after she had received the letter from the Attorney General's office dated February 12, 1987, or until after some time had elapsed following her letter to the Attorney General's office dated February 18, 1987, asking if such determination to terminate her lease was a final decision. We cannot agree.

Judicial review of an administrative action is governed by Rule 12 of the Wyoming Rules of Appellate Procedure. W.R. A.P. 12.01 provides:

To the extent that judicial review of administrative action by a district court is available, any person who is aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or who is aggrieved or adversely affected in fact by any other agency action or inaction, or who is adversely affected in fact by a rule adopted by [an] agency,

---

**3.** The copy of the letter mentioned herein is apparently the certified letter sent by the Commissioner of Public Lands to Mrs. Scanlon on January 21, 1986.

may obtain such review as provided in this rule.

W.R.A.P. 12.04 provides in pertinent part:

In a contested case, or in a noncontested case where a statute places a time limit on appeal, the petition for review shall be filed within thirty (30) days after written, certified notice to all parties of the final decision of the agency or denial of the petition for a rehearing, or, if a rehearing is held, within thirty (30) days after written, certified notice to all parties of the decision thereon, except that upon a showing of excusable neglect based upon the failure of a party to learn of the decision or action, the district court may extend the time for filing the petition for review not exceeding thirty (30) days from the expiration of the original time herein prescribed.[4]

The January 15, 1987, notice to Mrs. Scanlon advised her of a final decision by an agency which adversely affected her rights.[5] The correspondence between the Attorney General's office and Mrs. Scanlon's attorney had no bearing on the finality of the agency's decision and did not serve to toll the thirty-day period of time in which to file her petition for review.[6] Although Mrs. Scanlon may have had meritorious issues for review, her failure to file her petition for such review within thirty days after receiving notice divested the district court of jurisdiction.

In the case of *Stagner v. Wyoming State Tax Commission*, 642 P.2d 1296, 1297–98 (Wyo.1982), we stated that untimely filing is a ground for dismissal of a petition for review:

Timely filing of a petition for review is mandatory and jurisdictional.

\*　　\*　　\*　　\*　　\*　　\*

\* \* \* [I]t must be within thirty days of such action or of notice of such action or of the time the person becomes aggrieved or adversely affected by such action, whichever is latest. A petition for judicial review may be timely if filed within thirty days after a rule or agency action or inaction adversely affects the person although the action, inaction, or adoption of the rule may have occurred long before that time. Likewise, a petition for review may be timely if filed within thirty days after receiving notice thereof although the action, inaction, or adoption of the rule may have occurred long before that time. In a contested case, the required notice of the decision will normally start the running of the thirty-day period.

"The law is almost elementary that whatever puts a party on inquiry amounts to 'notice.'" *Rodin v. State [ex rel. City of Cheyenne]*, Wyo., 417 P.2d 180, 195 (1966).

(Citations omitted.) See also *Employment Security Commission of Wyoming v. Young*, 713 P.2d 198 (Wyo.1986).

We also stated:

This court can have no greater jurisdiction of the subject matter than the trial court and where the trial court had no jurisdiction in an administrative appeal from an agency, this court must dismiss the appeal.

*Snell v. Ruppert*, 541 P.2d 1042, 1048 (Wyo.1975), quoted in *Joelson v. City of*

4. Such review is available by statute. W.S. 16–3–114(a) provides in applicable part:

Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review \* \* \*. The procedure to be followed in the proceeding \* \* \* shall be in accordance with

rules heretofore or hereinafter adopted by the Wyoming supreme court.

5. This becomes particularly apparent when it is recognized that on August 2, 1986, the Board of Land Commissioners entered into a lease agreement with Amoco Production Company for a portion of the land formerly leased by Mrs. Scanlon.

6. If the soliciting of reconsideration or clarification of agency action were permitted, the limit on the time to file a petition for judicial review would be rendered meaningless.

*Casper, Wyoming,* 676 P.2d 570, 572 (Wyo. 1984).

We hold that the district court lacked jurisdiction to proceed with this cause, and such lack of jurisdiction by the district court undermines the jurisdiction of this Court.

Dismissed.

THOMAS, J., files a specially concurring opinion.

URBIGKIT, J., files a specially concurring opinion in which THOMAS, J., joins.

THOMAS, Justice, specially concurring.

In my view, Justice Urbigkit has captured the appropriate rationale for dismissal of this appeal. Consequently, I join in his concurring opinion, but I think it is appropriate to add the following comment of my own.

In *Brasel & Sims Construction Company, Inc. v. State Highway Commission of Wyoming,* Wyo., 655 P.2d 265 (1982), this court held that an administrative body does not have authority to adjudicate contract disputes involving contracts to which it is a party, unless that authority specifically has been granted. See also *State Highway Commission of Wyoming v. Brasel & Sims Construction Company, Inc.,* Wyo., 688 P.2d 871 (1984), and *Rissler & McMur-*

*ry Company, Inc. v. Wyoming Highway Department,* Wyo., 582 P.2d 583 (1978) (Justice Raper and Justice Thomas dissenting). In addition to the views of Justice Urbigkit, I suggest that the statute in this instance does not appear to afford the Board of Land Commissioners the authority to adjudicate disputes arising out of its leases.

URBIGKIT, Justice, specially concurring, with whom THOMAS, J. joins.

Although I could find a substantive basis to affirm the decision of the land office for lease cancellation and also sustain the decision on procedural justification derived from non-exhausting administrative remedies, I do not find a final order was ever entered initiating judicial-review time limitations.[1]

In equal substance and significance to the inquiry whether a final order was entered involving this administratively defined state agency under the general jurisdiction of the administrative division of state government, is the question whether a sufficient exhaustion of administrative remedies occurred so that appeal to the courts was authorized at this juncture. A not dissimilar concern could be envisioned as to who makes final decisions for the highway commission, the state game and fish commission, the environmental quality

---

1. I am concerned with the apparent determination that an intermediate state employee can, by speed memo, take "final agency action" without demonstrated authority, and that this action is apparently now considered to be action of the designated administrator of the government agency, the State Land Commissioner, even though noticed in a form that lacks compliance with the requirement of Rule 12.04, W.R.A.P.:

   " * * * within thirty (30) days after written, *certified notice to all parties of the final decision of the agency* or denial of the petition for rehearing, or, if a rehearing is held, within thirty (30) days after written, *certified notice to all parties of the decision thereon,* except that upon a showing of excusable neglect based upon the failure of a party to learn of the decision or the action, the district court may extend the time for filing the petition for review not exceeding thirty (30) days from the expiration of the original time herein prescribed. * * * " (Emphasis added.)

   It is unquestioned that no certified notice authored by whomever was ever sent, since the medium of communication was a speed memo sent by ordinary mail returning the tendered check. Real problems may arise in Wyoming administrative agency operations if intermediate-level employees are generally entrusted with formal agency-action authorization to make the "final decision" upon which judicial review is based. As a quick example, it is possible that this decision might extinguish the right of the agency head to make the final decision as then considered to be something in the nature of a rehearing, which might be subject to operational rules for authorization. The subject could be belabored in both operational practice and legal rules of authority delegation, but suffice it to say that this record simply lacks justification for designation of the returned check memo as of itself being final agency action. Furthermore, extraction of the certified mail requirement is unjustified and unexplained.

council, within the office of the Governor, or for that matter, a law clerk as an adjunct to the Wyoming Supreme Court accommodating a desired activity within the judicial branch of state government. Does a district highway engineer, a game warden, a field supervisor, or some other agency employee take final action upon which, without resort to the agency's superintending or supervisory authority, judicial review becomes justified?

For this activity and agency, Wyo. Const. art. 18, § 3 provides:

"The governor, secretary of state, state treasurer, state auditor and superintendent of public instruction shall constitute a board of land commissioners, which under direction of the legislature as limited by this constitution, shall have direction, control, leasing and disposal of lands of the state granted, or which may be hereafter granted for the support and benefit of public schools, subject to the further limitations that the sale of all lands shall be at public auction, after such delay (not less than the time fixed by congress) in portions at proper intervals of time, and at such minimum prices (not less than the minimum fixed by congress) as to realize the largest possible proceeds. And said board, subject to the limitations of this constitution and under such regulations as may be provided by law shall have the direction, control, disposition and care of all lands that have been heretofore or may hereafter be granted to the state."

The complementary statute provides:

"The governor, secretary of state, state treasurer, state auditor, and superintendent of public instruction, being constituted a 'board of land commissioners' by the provisions of section 3, article 18, of the constitution of the state of Wyoming, shall as such board, have the direction, control, leasing, care and disposal of all lands heretofore or hereafter granted or acquired by the state for the benefit and support of public schools or for any other purpose whatsoever, subject to the limitations contained in the constitution of the state, and the laws enacted by the legislature. The board shall have the power and authority to take such official action as may be necessary in securing title to land grants, or any other lands acquired by the state." Section 36–2–101, W.S.1977.

In effectuation of that responsibility, the state land office, as an agency under the general administrative jurisdiction of the Governor of the State of Wyoming, was created.[2] The duties of the commissioner of public lands are specified as:

"The commissioner of public lands shall keep the records of the board of land commissioners, and be the secretary thereof. He shall make out and countersign all patents, contracts or other instruments issued by him to purchasers and others, and make out and sign all leases. He shall keep a record of all such leases, patents or other instruments in books or other records. He shall file and preserve in his office all bonds, contracts, leases, and other instruments given by lessees, purchasers and others. He shall have the custody of the seal of the board, and shall keep the minutes of the proceedings thereof, and shall perform such other duties concerning the business transactions of the board as it may direct. He shall receive all applications for purchasing, leasing, entering, locating or in any manner acquiring title to, interest in, or any benefit from or use of any lands belonging to or under the control of the state of Wyoming, and he shall allow or disallow, subject to the

---

**2.** The commissioner of public lands is appointed and removable by the Governor with senatorial confirmation for a term of two years. Section 36–3–101, W.S.1977. He keeps the records of the board of land commissioners and acts as secretary without vote. In a completely different constituency, the five elected officials are ex-officio members of the board of land commissioners, and have co-equal rights in voting subject to the designation of the Governor to act as president of the board. Section 36–2–103, W.S.1977. In the convoluted nature of Wyoming state government, the board and not the Governor appoints the state forester, § 36–2–108, W.S.1977, who heads the state forestry division and is under the supervision of the commissioner of public lands.

approval of the board of land commissioners, such applications to purchase, lease, enter or otherwise acquire title to, interest in, benefit from or use of the lands, or the appurtenances thereof, and in all cases where there have been no conflicting applications, he shall report his decisions to the board for its approval at its next ensuing regular or special meeting, but in all cases where there have been conflicting applications to lease or otherwise acquire interests or benefits in the lands, he shall, before reporting his decisions to the board, give each of the applicants notice of what his decision is with reference to their applications, and if none of the applicants files an appeal in writing from the decisions of the commissioner to the board within a period of thirty (30) days, except in the case of oil and gas leases when the period shall be not less than ten (10) days nor more than thirty (30) days at the discretion of the board, after the date of the notice, the commissioner shall report his decision to the board for approval at its next meeting and in case an appeal in writing is taken from the decision of the commissioner to the board of land commissioners within the time provided, the commissioner shall give each of the applicants at least ten (10) days' notice, except in the case of oil and gas leases when the period shall be five (5) days' notice in writing of the date on which the appeal will be heard by the board. * * *" Section 36–3–102(a), W.S.1977 (1988 Cum. Supp.).

Provision for judicial appeal is provided in § 36–2–206, W.S.1977 from the state board, but no similar provision is included as to any direct appeal from the commissioner of public lands or the land office which would encompass judicial review without first exhaustion of the administrative authority and final decisional power of the board of land commissioners.

The board's primary jurisdiction over state lease cancellation is designated in § 36–5–113, W.S.1977:

"The board shall have the power and authority to cancel leases procured by fraud, deceit or misrepresentation, or for use of the lands for unlawful or illegal purposes, or for the violation of the covenants of the lease, upon proper proof thereof."

See also § 36–6–101, W.S.1977, for designation of authority for oil and gas leases as conforming to the Constitution.

This relationship between the land office, the commissioner of public lands, and the board of land commissioners was specifically addressed by this court in Reese v. Bruegger Ranches, Inc., Wyo., 463 P.2d 23, 25 (1969):

"Under art. 18, § 3, Wyoming Constitution, and under § 36–14, W.S.1957, constitutional and statutory authority is granted to the Board of Land Commissioners to lease lands of the state. Thus, the Commissioner could not finally determine what rental would be due in a contested case of this kind, without the Board's approval; and if he attempted to notify the contestee that the contestee had to accept his recommendation and pay the balance recommended by him, such notice would be premature if it preceded action by the Board.

\* \* \* \* \* \*

"It will be noticed that § 36–34 [presently § 36–3–102, W.S.1977] requires the Commissioner to give notice to the contesting parties of his decision. Even if there is no appeal, he still must report his decision to the Board for approval at its next meeting. \* \* \*

" \* \* \* There can be no doubt that the Board is free to follow or to modify or to disregard what the Commissioner has recommended."

In regard at least to the issue of this case, an oil and gas lease cancellation or nonrenewal, it is clear that the basic administrative jurisdiction rests with the board of land commissioners. There may be functions of the commissioner of public lands where direct reference to the court for judicial review might exist, but this case is certainly not of that category.

I would hold that neglect of the lease-right litigant to seek board review forecloses any direct appeal by review from the

courts. Consequently, I specially concur that no decision was made which is properly now presented here for judicial review. This court addressed an almost identical issue involving the state engineer and the state board of control, by an order in Wyoming Water, Inc. v. George L. Christopulos, No. 86-177, dated December 3, 1987, remanding to the district court for entry of an order remanding the case to the state board of control, with instructions that a hearing be held by the state board of control. Cf. Willadsen v. Christopulos, Wyo., 731 P.2d 1181 (1987), and Green River Development Co. v. FMC Corp., Wyo., 660 P.2d 339 (1983), Thomas, J., specially concurring. The Wyoming Water case did at least pass through the board of control, which affirmed without hearing, and which is absent in this case where reference to the responsible administrative agency with final decision was never requested nor provided. See Battle, *Administrative Law, Wyoming Style*, XVIII Land & Water L.Rev. 223, 256 (1983) to "agencies with very substantial powers—e.g., the Board of Land Commissioners," and others. Unfortunately, nothing in this extended law journal article discussed the supposition that intermediate agency personnel might make final agency decisions. For a discussion of the general authority of the board of land commissioners under the Constitution and statutes, see Mayor v. Board of Land Com'rs, 64 Wyo. 409, 192 P.2d 403, reh'g denied 195 P.2d 752 (1948); State ex rel. Cross v. Board of Land Commissioners, 50 Wyo. 181, 62 P.2d 516 (1936); and State ex rel. Walls v. State Board of Land Com'rs, 36 Wyo. 302, 254 P. 491 (1927). The doctrine of exhaustion of administrative remedies was directly addressed by this court in People v. Fremont Energy Corp., Wyo., 651 P.2d 802 (1982) and City of Cheyenne v. Sims, Wyo., 521 P.2d 1347 (1974).

"* * * The exhaustion doctrine applies where an agency alone has been granted or found to possess exclusive jurisdiction over the case. The purpose of the doctrine then is to avoid premature interruption of the administrative process where the agency has been created to apply a statute in the first instance. * * *"

People v. Fremont Energy Corp., supra, 651 P.2d at 811.

This policy application summarizes my analysis in this case, and I consequently submit this special concurrence.